1200/18-7238.SC/kmc/db

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOHN DOE and A.B., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.: 3:20-cv-129-DRL-MGG |
| | ) | |
| ADAM GRAY, individually and in his Official | ) | |
| capacity as officer of the Starke County Sheriff | ) | |
| Department, KATHERINE PURTEE, | ) | |
| individually and in her official capacity as | ) | |
| Family Case Manager with the Indiana | ) | |
| Department of Child Services, STARKE | ) | |
| COUNTY SHERIFF DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS ADAM GRAY AND STARKE COUNTY SHERIFF'S DEPARTMENT'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This Court should grant these Defendants' Motion for Summary Judgment because no genuine issue of material fact exists so as to preclude summary judgment in their favor. This case arises out of Plaintiffs' February 7, 2018 arrest for neglect of a dependent and non-support of a dependent and subsequent investigation. [DE #1]. John Doe and A.B. are spouses who brought suit, whereupon John Doe alleges a violation of his Fourteenth Amendment right to privacy, an intentional infliction of emotional distress claim, and *respondeat superior* claim and both John Doe and A.B. allege false arrests in violation of their Fourth Amendment rights against Adam Gray and the Starke County Sheriff's Department. [DE #1]. Summary judgment is appropriate in these Defendants' favor because: (1) John Doe's privacy claim fails because no constitutional right to privacy of one's birth name, sex, and anatomy exists, Detective Gray did not violate any

1

such right to privacy if one does exist, and Detective Gray is otherwise entitled to qualified immunity; (2) Plaintiffs' false arrest claims fail because probable cause existed for Plaintiffs' arrests and Detective Gray is otherwise entitled to qualified immunity; and (3) John Doe's state law claims fail because Detective Gray is immune under the Indiana Tort Claims Act and his behavior otherwise is not intentional, nor extreme and outrageous and there is no basis for liability for the Starke County Sheriff's Department under *respondeat superior* without an underlying tort.

## STATEMENT OF MATERIAL FACTS[1]

On February 1, 2018, Detective Adam Gray and Katherine Purtee of the Indiana Department of Child Services met with and interviewed seventeen year old R.M. because Purtee received a call that R.M. had been abandoned by his mother, A.B., and John Doe. [Affidavit of Adam Gray, Exhibit A, ¶ 2]. R.M. advised that he lived with his mother, A.B., and stepfather, John Doe, with whom he had been living since November 14, 2017. [Gray Affidavit, ¶ 5(a)]. R.M. stated that he was aware that his sister, J.M., snuck out of the house and after A.B. and John Doe learned about it on or around January 22, 2018, they told him to leave the house and not to come home. [Gray Affidavit, ¶ 5(c)]. R.M. went to stay at his friend M.B.'s house ("the Brewer house") and tried to talk to his mother about it, but she said that whatever John Doe said was how it was going to be. [Gray Affidavit, ¶ 5(e)].

R.M. stated he was out of the house from January 22, 2018, he returned home to do chores on January 24, 2018, but returned to the Brewer house and had not returned home. [Gray Affidavit, ¶ 5(h)]. R.M. advised that A.B. texted him and told him to come home and get on the couch because he was grounded, but R.M. did not respond. [Gray Affidavit, ¶ 5(g)]. Other than that

---

[1] Detective Adam Gray prepared a police report documenting the entire incident that is the subject of Plaintiffs' Complaint, which is summarized in and attached to his Affidavit. This statement of material facts comes from Detective Gray's Affidavit, police report, and the interviews of R.M., A.B., and John Doe, as well as Plaintiffs' testimony.

text, R.M. stated that he had not had any other contact with A.B.  [Gray Affidavit, ¶ 5(g)].  R.M. stated that A.B. dropped off food at the Brewer house one time.  [Gray Affidavit, ¶ 5(f)].  When describing his relationship with John Doe, R.M. stated that they have never gotten along because R.M. knew things about John Doe that John Doe does not want anyone to know – mainly that he has female parts.  [Gray Affidavit, ¶¶ 5(i)-(j)].  R.M. stated that he believed John Doe was molesting his younger sisters.  [Gray Affidavit, ¶ 5(j)].  After the interview with R.M., Detective Gray investigated R.M.'s statements and obtained police reports from South Carolina involving John Doe and A.B.  [Gray Affidavit, ¶ 6].

On February 7, 2018, R.M. gave an audio and visually recorded interview at the Starke County Sheriff's Department while Detective Gray and Purtee were present.  [Gray Affidavit, ¶ 8; R.M. Interview & Transcript, Exhibit A-1].[2]  The substance of R.M.'s February 7th interview was the same as the February 1st interview.  [Gray Affidavit, ¶ 8].  R.M. elaborated on the circumstances of A.B. and John Doe kicking him out of the house – mainly that John Doe texted R.M. and told him that he had not changed and that he could stay at the Brewer house and A.B. told R.M. to deal with it when R.M. questioned her about being kicked out.  [Gray Affidavit, ¶¶ 9(a)-(b)].  R.M. stated that John Doe and A.B. did not give him any money since he was staying at the Brewer house and only gave him food once.  [Gray Affidavit, ¶¶ 9(c)-(d)].  R.M. advised that A.B. and John Doe did not contact the school, Department of Child Services, nor the police about him not staying at their house.  [Gray Affidavit, ¶ 9(g)].

R.M. also reaffirmed that he suspected John Doe was a woman for a long time and found it was true, that he did not believe John Doe to have male parts, that he was told by girls at school

---

[2] These Defendants have transcribed this interview (as well as the interviews of John Doe and A.B.) for the Court's convenience.  Due to the fact that personal identifying information and/or Plaintiffs real names were mentioned in these interviews, these Defendants redacted said information.

in Michigan that his stepfather was transgender, that he found fake penises around the house and under a tire in John Doe's car and testosterone and needles, and that he knew John Doe was "Barbie."  [Gray Affidavit, ¶ 9(g), (i)-(m)].  R.M. detailed previous incidents in South Carolina where M.M., R.M.'s sister, told R.M. that she saw John Doe looking at pictures of M.M. and A.M.'s (one of R.M.'s younger sisters) genitals all night and John Doe smacking A.B. and John Doe's daughter's butt and genitals.  [Gray Affidavit, ¶ 9(o)-(p)].  R.M. stated that he had not seen John Doe do anything sexual with his other sisters, but that he is always sexual and believes John Doe to possibly be brainwashing and creating other mental issues for his sisters.  [Gray Affidavit, ¶ 9(p)-(q)].

Detective Gray obtained a letter from Suzanne Brewer, which confirmed that R.M. was staying at her house, that A.B. and John Doe did not provide her with any money, that she had never spoken with or met A.B., and A.B. has never stopped by to check on R.M.  [Gray Affidavit, ¶ 10; Suzanne Brewer Letter, Exhibit A-2].  Detective Gray believed that probable cause existed for the arrests of A.B. and John Doe for neglect of a dependent and/or non-support of dependent based on the information that he learned from R.M., his investigation, and the letter from Ms. Brewer.  [Gray Affidavit, ¶ 11].  Before the arrests, Gray contacted Chief Deputy Prosecutor Mary Ryan, conveyed all of the information that he had learned through his investigation to her, and Chief Deputy Prosecutor Ryan advised that Gray had probable cause to arrest both A.B. and John Doe for neglect of a dependent and non-support of a dependent.  [Gray Affidavit, ¶ 12].

A.B. and John Doe were arrested on February 7, 2018 at about 6:00pm and were transported to the Starke County Jail.  [Gray Affidavit, ¶ 13].  Once in the holding cell, John Doe was given a jail uniform to change in to, but John Doe refused to strip naked as he was told by the jail officer.  [Excerpts of Deposition of John Doe, Exhibit B, p. 121].  Detective Gray subsequently

entered the cell, pulled the door closed, and John Doe complied with Detective Gray's request to change into the jail uniform. [Gray Affidavit, ¶¶ 15, 17]. John Doe was not strip searched at the jail. [Doe Deposition, pp. 122, 139]. John Doe did not strip completely naked, as he kept his underwear on, and Detective Gray did not physically search and/or touch him while John Doe was changing. [Gray Affidavit, ¶¶ 18-19; Doe Deposition, pp. 121].

Detective Gray interviewed A.B. on February 8, 2018 to investigate the abandonment of R.M., as well as the allegations of sexual misconduct that came up in the interview with R.M. [Gray Affidavit, ¶ 20; A.B. Interview & Transcript, Exhibit A-4]. While interviewing A.B. about the sexual misconduct allegations concerning John Doe, Detective Gray stated that John Doe was born Barbara B., that he was born female, and that he did not have a penis. [Gray Affidavit, ¶ 21; Excerpts of Deposition of A.B., Exhibit C, pp. 23-24]. A.B. told Detective Gray that she did not know John Doe did not have a penis, but John Doe had told her the name he was born with (Barbara a/k/a Barbie) and that "medically down there like it's different." [Gray Affidavit, ¶ 22(k)]. John Doe was born female, his birth name was Barbara, he does not have a penis, and he has never had a penis. [Doe Deposition, pp. 5, 36-37].

John Doe and A.B. brought suit against Detective Gray and the Starke County Sheriff's Department alleging that these Defendants: (1) violated John Doe's Fourteenth Amendment right to privacy in his sexual preference; (2) violated John Doe's and A.B.'s Fourth Amendment rights by arresting them without probable cause; and (3) caused John Doe to experience intentional infliction of emotional distress. [DE #1].

## LEGAL STANDARD

Summary judgment should be granted when there is no issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After the moving party has met the initial burden to show that there is

no genuine issue of material fact, the opposing party may not rest on his pleadings.  *Id*.  Instead, the opposing party must present some admissible evidence showing he has a case to take to the jury.  *Id*.  Not all disputed facts are material.  *Anderson v. Liberty Lobby*, *Inc.,* 477 U.S. 242, 248 (1986).  Only those facts which might affect the outcome of the suit in light of substantive law are material facts sufficient to preclude summary judgment.  *Id*.  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *Id*. at 248.  Where a party opposing summary judgment fails to set forth specific facts to demonstrate a genuine issue of material fact, summary judgment must be granted.  *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

## ARGUMENT

## I.  JOHN DOE'S FOURTEENTH AMENDMENT PRIVACY CLAIM FAILS.

This Court should grant summary judgment in favor of Detective Gray on John Doe's Fourteenth Amendment privacy claim because no genuine issue of material fact exists that:  (1) Detective Gray did not disclose John Doe's sexual preference; (2) Detective Gray did not violate a cognizable constitutional right; and (3) Detective Gray is otherwise entitled to qualified immunity.

### A.  Detective Gray Did Not Disclose John Doe's Sexual Preference.

This Court should grant summary judgment in Detective Gray's favor because there is no genuine issue of material fact on the face of the Complaint that Detective Gray did not disclose John Doe's sexual preference.  John Doe's entire Complaint is wholly premised on a privacy claim for the alleged disclosure of his sexual preference, as distinguished from his transgender status.  [DE #1, ¶¶ 23-29].  In particular, John Doe alleges that Detective Gray violated his right to privacy by disclosing his sexual preference.  [DE #1, ¶¶ 23-29].  John Doe defines "sexual preference" as "who [he] is attracted to" and John Doe is attracted to females.  [Doe Deposition, pp. 82-83].  John Doe also stated that "being transgender has nothing to do with sexual preference."  [Doe

6

Deposition, p. 126].  However, the evidence of record shows that Detective Gray told A.B. that John Doe was born Barbara B., that he was born female, and he did not have a penis.  [Gray Affidavit, ¶ 21; A.B. Deposition, pp. 23-24; Doe Deposition, p. 125].  Detective Gray did not know and therefore did not disclose John Doe's sexual preference to anyone.  [Gray Affidavit, ¶¶ 29-30].  John Doe does not have any evidence that Detective Gray disclosed his sexual preference to anyone.  [Doe Deposition, pp. 127-129].  Therefore, summary judgment should be entered in Detective Gray's favor on John Doe's Fourteenth Amendment privacy claim as a matter of law.

**B.  Detective Gray Did Not Violate John Doe's Constitutional Rights.**

In the event that the Court finds that a Fourteenth Amendment right to privacy claim survives, summary judgment should still be entered in Detective Gray's favor because a constitutional right to privacy of one's birth name, sex, and anatomy does not exist, Detective Gray did not disclose protected information to the public, Detective Gray's disclosure served a legitimate law enforcement purpose, and Detective Gray otherwise did not disclose any of John Doe's private information to anyone.  The cases involving a constitutionally protected zone of privacy sometimes characterize the privacy as involving one of two interests, one of which is the individual interest in avoiding disclosure of personal matters.  *Whalen v. Roe*, 429 U.S. 589, 599 (1977).  However, "[t]he concept of a constitutional right of privacy still remains largely undefined.  There are at least three facets that have been partially revealed, but their form and shape remain to be fully ascertained."  *Id*. at 599 n. 24.  One facet is "the right of an individual not to have his private affairs made public by the government."  *Id*.  The decision in *Whalen* was narrowly tailored to a privacy interest in medical information and did not reach or define a privacy right in the issues that are present in this case – John Doe's birth name, sex, and anatomy.

The Seventh Circuit has applied *Whalen*, recognizing that a right to privacy exists in certain information, but has followed the Supreme Court in not addressing or expanding the right to

privacy beyond medical records and corresponding communications.  As in *Whalen*, the scope and contours of the right have not been defined by the Seventh Circuit or expanded beyond the limited application in *Whalen*.  *Denius v. Dunlap*, 209 F.3d 944, 955 (7th Cir. 2000).   In the Seventh Circuit, consistent with *Whalen*, there is a limited the right to medical records and corresponding communications, but "it is not clear whether other confidential information…also receives the same protection under this right."  *Id*. at 956.  "Furthermore, while it is apparent that some form of balancing test would be used to determine when this right of confidentiality has been violated, that test has not been defined in this Circuit."  *Id*.  Therefore, John Doe's claim is unsupported by any legal precedent applying the privacy right to the issues present in this case and this Court should follow the Seventh Circuit decisions, which have refrained from expanding the contours of the right beyond the limitations addressed in *Whalen*.  In other words, a privacy interest in an individual's birth name, sex, and anatomy has not been found to exist.  John Doe does not allege that medical records or communications were disclosed and as noted above, the disclosure was limited to his birth sex, name, and anatomy.  This disclosure does not fall into the privacy interest in medical records and corresponding communications, as same does not suggest any medical procedure or condition.  As such, Detective Gray has not violated a cognizable constitutional right and summary judgment should be entered in his favor.

John Doe alleges that Detective Gray told A.B. that John Doe was a female and did not have male genitalia and that he disclosed John Doe's sexual preference to Purtee.  [DE #1, ¶¶ 18, 20].  John Doe further alleges that Detective Gray told Ronald McClusky Jr. (A.B.'s ex-husband and father of R.M.) and R.M. that he was born a female, that he did not have male genitalia, and/or his sexual preference.  [Doe Deposition, p. 127; A.B. Deposition, pp. 50, 130]. John Doe's privacy claim fails as a privacy right in the information asserted does not exist, Detective Gray did not

make a public disclosure, the disclosure was made in the course of lawful law enforcement activities, and Detective Gray otherwise did not disclose the alleged private information to the individuals alleged.

To begin, in the event that the Court finds that there is a material issue as to whether or not such a constitutional right to privacy in an individual's birth name, sex, and anatomy exists, Detective Gray did not violate such a right because the disclosure was made to John Doe's spouse, A.B., not the public.  To the extent that this privacy right exists, the right is only violated if the governmental actor makes the private information *public*.  *Whalen*, 429 U.S. at 599 n. 24. Detective Gray did not disclose John Doe's birth name, sex, and anatomy to anyone, aside from John Doe's wife, A.B.  [Gray Affidavit, ¶¶ 21, 30-33].  Disclosure to a spouse is a far cry from disclosure to the public.  As such, Detective Gray did not disclose private information to the public and is entitled to summary judgment on John Doe's Fourteenth Amendment claim.

Further, in the event that the Court finds a material issue of fact that a person's birth name, sex, and anatomy is entitled to constitutional protection from disclosure and that the disclosure to A.B. was considered a public disclosure, a legitimate law enforcement interest was served in the disclosure.  One of the Detective Gray's purposes in interviewing A.B. was to determine whether she had any knowledge of the sexual misconduct that R.M. alleged John Doe to have perpetrated. [Gray Affidavit, ¶ 21].  Detective Gray made the disclosure in the context of investigating and preventing possible sexual misconduct, which is a legitimate law enforcement purpose.  *See Hostetler v. City of Southport*, 2018 WL 1505012, at *4 (S.D. Ind. Mar. 27, 2018) (noting that carrying out law enforcement duties include interviews and other investigative acts).  As such, John Doe's privacy claim fails for this additional reason and Detective Gray is entitled to summary judgment.

Finally, there is no genuine issue of material fact that Detective Gray did not disclose to Purtee, Ronald McClusky Jr., nor R.M. that John Doe was born female, did not have male genitalia, or John Doe's sexual preference as alleged in his Complaint.  [Gray Affidavit, ¶¶ 31-33].  In fact, John Doe has admitted that he does not have any evidence that Detective Gray told Purtee, Ronald McClusky Jr., or R.M. anything.  [Doe Deposition, pp. 127-129].  This testimony is fatal to John Doe's privacy claim alleged in the Complaint.  As such, any claim that Detective Gray disclosed that John Doe was born female, did not have male genitalia, or his sexual preference to Purtee, Ronald McClusky Jr., and R.M. fail and summary judgment should be entered in Detective Gray's favor.

### C.  Detective Gray is Otherwise Entitled to Qualified Immunity.

In the event the Court finds that there is a question of fact as to whether Detective Gray violated John Doe's constitutional right to privacy, Detective Gray is entitled to qualified immunity.  A police officer is entitled to qualified immunity unless they (1) violated a constitutional right and (2) the unlawfulness of their conduct was clearly established at the time. *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018).  "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  *Id*. (internal quotations omitted).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Id*. In other words, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Humphries v. Milwaukee County*, 702 F.3d 1003, 1006 (7th Cir. 2012).  The plaintiff bears the burden of pointing to clearly established law particularized to the facts of the case at hand.  *White v. Pauly,* 137 S.Ct. 548, 552 (2017).

Here, Detective Gray is entitled to qualified immunity because it was not clearly established at the time of his conduct that disclosing the birth name, sex, and anatomy to the

person's spouse violated any constitutional rights as set forth in the cases above.  In particular, John Doe will be unable to point to clearly established law or any case that establishes a constitutional right to privacy in his birth name, sex, and anatomy.  In fact, the Supreme Court has never explicitly recognized, directly or squarely, or addressed a constitutional right to privacy in birth name, sex, and anatomy.  The Seventh Circuit has specifically applied qualified immunity to a claim that a privacy right was violated in disclosure of an already made public piece of information and entered qualified immunity for the defendants, recognizing that no clearly established right to privacy beyond medical records and communications existed. *Chasensky v. Walker*, 740 F.3d 1088, 1098 (7th Cir. 2014).  The Seventh Circuit's application of qualified immunity to the right to privacy is controlling and dispositive here.

Applying the qualified immunity analysis to the specific facts in this case, as opposed to a general constitutional right as is mandated in federal law, yields only one result here.  *See Wesby*, 138 S.Ct. at 589-90 (setting forth the specificity requirement for qualified immunity).  As applied to the facts in the instant case, it was objectively reasonable for Detective Gray to have believed that disclosing information to one's spouse concerning his current anatomy would not violate John Doe's constitutional rights.  Additionally, further addressing the specific facts in this case, it was objectively reasonable for Detective Gray to have assumed that A.B., John Doe's spouse of nine years, would have had knowledge of her spouse's physical anatomy.  Therefore, Detective Gray is entitled to qualified immunity because no clearly established right to the privacy of an individual's birth name, sex, and anatomy existed at the time of his conduct and as applied to the evidence in this case, his conduct was objectively reasonable as a matter of law.  Qualified immunity should also be afforded to Detective Gray because John Doe has the burden in this Circuit to establish that Detective Gray violated a clearly established constitutional right.  *Perry v.*

*Sheahan*, 222 F.3d 309, 315 (7th Cir. 2000).  As discussed above from the cases directly on point, John Doe will wholly fail to meet his burden to establish the existence of a clearly established right.  Therefore, for all the reasons above, qualified immunity should be granted and summary judgment should be entered in Detective Gray's favor.

## II.   JOHN DOE AND A.B.'S FALSE ARREST CLAIMS FAIL BECAUSE PROBABLE CAUSE EXISTED TO ARREST PLAINTIFFS AND DETECTIVE GRAY IS OTHERWISE ENTITLED TO QUALIFIED IMMUNITY.

This Court should grant summary judgment in favor of Detective Gray on John Doe's and A.B.'s Fourth Amendment false arrest claims because no genuine issue of material fact exists that probable cause existed for their arrests and Detective Gray is otherwise entitled to qualified immunity.

### A.  Probable Cause Existed for Plaintiffs' Arrests.

This Court should grant summary judgment in Detective Gray's favor on Plaintiffs' false arrest claims because probable cause existed for their arrests.[3]  Probable cause exists "when at the time of the arrest the facts and circumstances within the knowledge of the officer and of which he had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that an arrestee had committed or was committing an offense."  *Howlett v. Hack*, 794 F.3d 721, 726-27 (7th Cir. 2015).  It is a "commonsense determination, measured under a reasonableness standard," as to whether probable cause exists.  *Gower v. Vercler*, 377 F.3d 661, 668 (7th Cir. 2004).  Whether probable cause exists "turns on information known to the officers at the moment the arrest is made, not on subsequently-received information."  *Id*.  "Instead, so long as a reasonably credible witness or victim informs the police that someone has committed, or is

---

[3] Plaintiffs were not found innocent of these charges.  Plaintiffs entered into deferred prosecution agreements.  *See* John Doe Deferred Prosecution Agreement, Exhibit D; A.B. Deferred Prosecution Agreement, Exhibit E.

committing, a crime, the officers have probable cause to place the alleged culprit under arrest." *Id*. at 668-69.

Here, probable cause existed for Plaintiffs' arrests for neglect of a dependent and non-support of a dependent.  An individual commits neglect of a dependent (a level 6 felony) if said "person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, [] knowingly or intentionally deprives the dependent of necessary support."  Ind. Code § 35-46-1-4(a)(3).  An individual commits non-support of a dependent if they "knowingly or intentionally fail[] to provide support to the person's dependent child…."  Ind. Code § 35-46-1-5(a).  Based on the information that Detective Gray knew at the time of the arrests, a prudent person of reasonable caution would believe that John Doe and A.B. committed and were still committing neglect of a dependent and non-support of a dependent as to R.M.

Detective Gray learned from Purtee that a report had been made that a seventeen year old had been abandoned by his mother.  [Gray Affidavit, ¶ 3].  Detective Gray and Purtee met with the seventeen year old, R.M., twice and Detective Gray obtained the following information:

- After learning that R.M. knew about his sister sneaking out of the house, John Doe told R.M. to leave, to not come home, and that he could stay at M.B.'s house ("the Brewer house").

- As a result, R.M. stayed at his friend M.B.'s house starting around January 22, 2018 through and including the last interview date, February 7, 2018.

- R.M. contacted his mother, A.B., about being kicked out and A.B. said that whatever John Doe said was how it was going to be and to deal with it.

- A.B. brought food to the Brewer house once.  A.B. left the food on the porch and did not give it to R.M. or Suzanne Brewer, M.B.'s mother.

13

- A.B. texted R.M. telling him to come home and get on the couch because he was grounded, but R.M. did not respond and did not go home. Aside from that text, R.M. did not have any other contact with A.B.

- John Doe and A.B. did not provide R.M. with any money during the time he was staying at the Brewer house.

- R.M. picked up his clothes from John Doe and A.B.'s house.

- John Doe and A.B. did not contact the school, Department of Child Services, nor the police about R.M.

[Gray Affidavit, ¶¶ 4-5, 9].

Following the interviews with R.M., Detective Gray confirmed R.M. had been staying at the Brewer house and obtained a letter from Suzanne Brewer that stated R.M. was staying at her house, that A.B. and John Doe had not given her any money to support R.M., that A.B. had not called her to check on R.M., and A.B. left a small bag of food on her porch. [Gray Affidavit, ¶ 10; Suzanne Brewer Letter, Exhibit A-2]. Thus, prior to the arrests of A.B. and John Doe, Detective Gray obtained information from R.M. that was reasonably trustworthy as he was the victim of the crime as the dependent that had been neglected and/or not supported. Further, Detective Gray obtained corroborating information from the woman whose home R.M. was staying at, confirming that R.M. was staying at her house and that A.B. and John Doe had not provided any money or support, aside from one small bag of food, during the time that R.M. was staying with her. Both of these sources were reasonably credible, as they presented consistent information concerning R.M. and John Doe and A.B.'s behavior. As such, at the time of the arrests, Detective Gray made a common sense decision based on all information available to him at the time, which led him to reasonably believe that probable cause existed for the arrests of John Doe and A.B. for neglect of

a dependent and non-support of a dependent.  [Gray Affidavit, ¶ 11].  Therefore, Plaintiffs' false arrest claims fail as probable cause existed for their arrests and summary judgment should be entered in Detective Gray's favor.

### B.  Detective Gray is Entitled to Qualified Immunity for Plaintiffs' False Arrest Claims.

In the alternative, this Court should grant summary judgment in favor of Detective Gray because he is entitled to qualified immunity as he did not violate any clearly established right as demonstrated by the controlling Supreme Court and Seventh Circuit cases discussed below and he relied on advice of counsel for the arrests of Plaintiffs.  A police officer is entitled to qualified immunity unless they (1) violated a constitutional right and (2) the unlawfulness of their conduct was clearly established at the time.  *Wesby*, 138 S.Ct. at 589.  The right to be free from arrests unsupported by probable cause has long been clearly established.  *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015).  Arguable probable cause exists when "a reasonable officer could have mistakenly believed that probable cause existed."  *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 878 (7th Cir. 2012).  Arguable probable cause is established "when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law."  *Id*. at 880.  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on questions of law and fact."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).  Qualified immunity "provides 'ample room for mistaken judgments' and protects all but the 'plainly incompetent and those who knowingly violate the law.'"  *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (*quoting Hunter v. Bryant*, 504 U.S. 224, 227 (1991)).  Once again,

Plaintiffs will fail to meet their burden of proof required in this Circuit to establish that that Detective Gray violated a clearly established constitutional right.

Here, as stated above, probable cause existed for Plaintiffs' arrests.  Applying the specificity requirement for qualified immunity on this issue, the facts in evidence establish the following.  Detective Gray received information from R.M. that he was kicked out of his house and his parents were not providing money or food (save for one time) since the time that he had been kicked out.  This information was confirmed by Suzanne Brewer, the mother of the house he was staying at when he was kicked out.  A reasonable officer in Detective Gray's position, with said information, could have reasonably believed that probable cause existed to arrest Plaintiffs for the violation of the Indiana neglect of a dependent and non-support of a dependent statutes.  As such, Detective Gray is entitled to qualified immunity as applied to the facts in this case and summary judgment should be entered in his favor.

Detective Gray is also entitled to qualified immunity for the additional reason and evidence that he relied on advice of counsel prior to effectuating Plaintiffs' arrests.  To determine whether a police officer is entitled to qualified immunity on the basis of reliance on advice of counsel, relevant factors the Court will examine include:  (1) "how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was[; (2)] whether complete information had been provided to the advising attorney(s)[; (3)] the prominence and competence of the attorney(s)[; and (4)] how soon after the advice was received the disputed action was taken." *Davis v. Zirkelbach*, 149 F.3d 614, 620 (7th Cir. 1998); *see also Morrell v. Mock*, 270 F.3d 1090 (7th Cir. 2001).

Addressing the specificity requirement of qualified immunity to apply to the facts of this case, the evidence reveals that Detective Gray contacted Chief Deputy Prosecutor Mary Ryan after

completing his investigation into the neglect of R.M.  [Gray Affidavit, ¶ 12].  Detective Gray conveyed the information that he had learned from the two interviews with R.M., his own investigation, and the letter he received from Suzanne Brewer to Chief Deputy Prosecutor Mary Ryan.  [Gray Affidavit, ¶ 12].  Chief Deputy Prosecutor Ryan told Detective Gray that he had probable cause to arrest both A.B. and John Doe for neglect of a dependent and non-support of a dependent.  [Gray Affidavit, ¶ 12].  The advice from the Chief Deputy Prosecutor was specifically tailored to the situation as it took into consideration the information provided to her and recommended specific charges under which to arrest.  Further, Detective Gray provided Chief Deputy Prosecutor Ryan all of the information learned and gathered at that point.  Chief Deputy Prosecutor Ryan is both prominent and competent, and Plaintiffs were subsequently arrested on February 7, 2018 at 6:00pm, which was shortly after Detective Gray received the advice to do so.  As such, Detective Gray is entitled to qualified immunity for the additional reason for his having relied on the advice of counsel in accord with the controlling Seventh Circuit precedent established in *Davis* and summary judgment should be entered in his favor.

### III.   JOHN DOE'S STATE LAW CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND RESPONEAT SUPERIOR FAIL.

As an initial matter, if the Court grants summary judgment in Defendants' favor on the Section 1983 claims, the Court should retain jurisdiction over the supplemental state law intentional infliction of emotional distress (IIED) and *respondeat superior* claims.  The Court's jurisdiction over John Doe's state law claims is premised upon 28 U.S.C. § 1367(a), which grants the United States district courts supplemental jurisdiction over state law claims that form the same Article III case or controversy as the claims over which the district court has original jurisdiction.  This section provides that "[a] district court may relinquish jurisdiction over a [supplemental state-law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."

17

28 U.S.C. § 1367(c).  This subsection also applies where a district court has granted summary judgment on all federal claims.  *See e.g., Hansen v. Bd. of Tr. of Hamilton S.E. Sch. Corp*., 551 F.3d 599, 608 (7th Cir. 2008).  Rather than automatically losing jurisdiction over supplemental state law claims, the statute grants district courts broad discretion in determining whether to retain or relinquish jurisdiction over supplemental claims.  *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997).  In deciding whether to retain jurisdiction over a supplemental claim, a district court should weigh "the values of judicial economy, convenience, fairness, and comity."  *Hansen*, 551 F.3d at 608.  If the Court grants Defendants' Motion for Summary Judgment on Plaintiffs' Section 1983 claims, the Court should exercise its discretion and retain jurisdiction over John Doe's state law claims because judicial economy, convenience, fairness, and comity would be served by the resolution of the state law claims, which are premised upon the same facts as the federal claims.

As Judge Tinder recognized in *Franklin v. Manek*, "a district court may [retain supplemental jurisdiction and] decide the merits of a state law claim if the claim does not present any 'novel or unsettled' questions of state law, or the appropriate disposition of the claim is 'crystal clear,' and it is 'otherwise efficient to do so.'"  *Franklin*, 2004 WL 1629544, at *11 (S.D. Ind., June 8, 2004) (citations omitted) (citing *Binz v. Brandt Constr. Co*., 301 F3d 529, 532 (7th Cir. 2002); *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001)).  "'If . . . an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case.'"  *Id*. (quoting *Van Harken*, 103 F.3d at 1354).

Here, the considerations that the Court must weigh in deciding whether to retain or relinquish supplemental jurisdiction strongly urge retaining jurisdiction. First and foremost, judicial economy would in no way be served by forcing John Doe's IIED and *respondeat superior* claims to state court, where the Parties would be sent back to the start line in litigating the claims. The Parties would be required to duplicate time, effort, and expense. Nor would the interest of comity be served by shunting the Parties to state court. The Seventh Circuit has recognized that federal courts should not "burden[] the state courts with a frivolous case." *Van Harken*, 103 F.3d at 1354. The issues set forth in the IIED and *respondeat superior* claims are not novel or in an unsettled area of law, as the case law surrounding these claims is well established. Further, it would be efficient for the Court to exercise jurisdiction over the state law claims as the Court has already been confronted with all of the facts and circumstances that serve as the basis of John Doe's state law claims in deciding the federal claims at issue. As discussed below, the immunity and law surrounding the IIED claim, as applied to the facts at issue here, clearly establish that John Doe's claims fail. Therefore, this Court should retain supplemental jurisdiction over John Doe's state law claims and should grant summary judgment in favor of these Defendants' on John Doe's state law claims because Detective Gray is immune under the Indiana Tort Claims Act and his behavior otherwise was not intentional, nor extreme and outrageous and there is no basis for liability for the Starke County Sheriff's Department under *respondeat superior* without an underlying tort.

### A.     John Doe's Intentional Infliction of Emotional Distress Claim Fails.

#### 1.     Detective Gray is Immune in His Individual Capacity under Ind. Code § 34-13-3-5(b).

This Court should grant summary judgment in Detective Gray's favor on John Doe's intentional infliction of emotional distress ("IIED") claim because he is immune in his individual

capacity under Ind. Code § 34-13-3-5(b).  Under Ind. Code § 34-13-3-5(b), a plaintiff cannot "sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of employment."  *Bushong v. Willamson*, 790 N.E.2d 467, 471 (Ind. 2003).  A complaint that includes allegations of an employee's actions within the scope of employment that led to the cause of action is "an immediate and early indication that the employee is not personally liable."  *Id*. at 472.  As such, the action is barred under Ind. Code § 34-13-3-5.  *Id*.  This is because "[u]nder the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."  *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014).

Here, summary judgment should be entered in Detective Gray's favor as no genuine issue of material fact exists that he was acting within the scope of employment at all times relevant.  To begin, John Doe specifically alleges that at all times relevant to the issues in this case, Detective Gray was acting "under the color of law" and "within the scope of his employment as an officer with the Starke County Sheriff Department."  [DE #1, ¶¶ 5, 45].  Further, Detective Gray affirmed that he was "acting within the course and scope of [his] employment…[with] the Starke County Sheriff's Department" at all times relevant.  [Gray Affidavit, ¶ 2].  As such, Detective Gray is entitled to immunity under Ind. Code § 34-13-3-5(b) and summary judgment in favor of Detective Gray is appropriate.

### 2.    Detective Gray is Immune under Ind. Code § 34-13-3-3(8).

To the extent that John Doe's IIED claim is asserted against Detective Gray in his official capacity, Detective Gray and/or the Starke County Sheriff's Department is immune under Ind. Code § 34-13-3-3(8).  "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from…the adoption and enforcement of…a law…unless the act of enforcement constitutes false arrest or false imprisonment."  Ind. Code § 34-

13-3-3(8).   While the ITCA will not immunize assault or battery, "'add on' claims such as negligence and intentional infliction of emotional distress do not survive simply because they are a product of improper conduct." *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1032 (N.D. Ind. 2014); *Chapman v. Indiana*, 2104 WL 1831161, at *4 (N.D. Ind. May 8, 2014) (noting that officers have immunity for IIED claims that arise from an officer's actions while engaging in law enforcement duties).

Here, as discussed above, Detective Gray was acting in the scope of his employment during all relevant times.   At the time of the disclosure, Detective Gray was engaging in law enforcement duties, specifically, interviewing a subject (A.B.) about potential sexual misconduct that was reported to Detective Gray and Purtee, specifically that John Doe may be sexually molesting the young girls.   [Gray Affidavit, ¶¶ 5(j), 9(p)-(q), 21]; *see Hostetler*, 2018 WL 1505012, at *4. Detective Gray's conduct was in furtherance of Starke County Sheriff's Department's business in enforcing the law and preventing any further crimes from occurring.   *See City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. Ct. App. 1999) (remarking that conduct that furthers an employer's business to an appreciable extent falls within the scope of employment, even if tortious and callous behavior).   Thus, Detective Gray disclosing that John Doe was born Barbara B., was born female, and did not have a penis was done in the course of interviewing A.B. in furtherance of Detective Gray's duty to investigate crimes, which was within the scope of his employment. Therefore, John Doe's "add on" claim of IIED cannot survive and Detective Gray in his official capacity and/or Starke County Sheriff's Department is entitled to immunity and summary judgment should be granted in these Defendants' favor.

3.      **Detective Gray's Conduct was Not Intentional, Nor Extreme and Outrageous.**

In the event that the Court finds that these Defendants are not immune under the ITCA for John Doe's IIED claim, summary judgment should still be entered in these Defendants' favor because Detective Gray's conduct was not extreme and outrageous.  Intentional infliction of emotional distress arises "when a defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another."  *Collins v. Purdue University*, 703 F. Supp. 2d 862, 871 (N.D. Ind. 2010).

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous.  It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id*. at 871-72. (collecting cases that quote Restatement (Second) of Torts § 46).  "The basis of the tort is the intent to harm emotionally."  *Id*. at 871.

Here, Detective Gray's disclosure of John Doe's birth name, sex, and anatomy to A.B., John Doe's wife, was not done with an intent to cause emotional harm and does not rise to the level of extreme and outrageous.  John Doe has no evidence that Detective Gray intended to cause emotional harm by his disclosure to A.B.  Rather, Detective Gray's intent in the disclosure was for solely for law enforcement purposes, specifically the investigation of allegations of sexual misconduct related to John Doe.  [Gray Affidavit, ¶ 21].  Therefore, there is no genuine issue of material fact that Detective Gray's statements were not made with intent to cause harm.

Further, it is not extreme and outrageous as a matter of law to make true, non-defamatory statements to the public, nor to engage in lawful law enforcement activities. *See Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996) (holding that summary judgment was proper as a matter of law because true statements made during a press conference and the execution of valid arrest and search warrants by seven officers was not extreme and outrageous). To begin, the information disclosed is true – John Doe's birth name is Barbara, he was born female, and he does not have a penis. [Doe Deposition, pp. 5, 36-37, 46]. As such, the statements made were true and non-defamatory. *See Conwell*, 667 N.E.2d at 777.

Moreover, the statements were made during the course of valid law enforcement activities, as Detective Gray was investigating the underlying crime for which John Doe and A.B. were arrested, as well as allegations of sexual misconduct. In addition, the statements were made to John Doe's wife, someone who had been in an intimate relationship with John Doe for eleven years. [A.B. Deposition, pp. 45-46]. A reasonable person would expect such a person to know that type of information of an intimate partner and cannot be said to be outrageous in character so as to exceed all possible bounds of decency. Therefore, Detective Gray's conduct cannot be said to be extreme and outrageous as a matter of law and summary judgment is appropriate in his favor. *See Conwell*, 667 N.E.2d at 777.

**B. John Doe's *Respondeat Superior* Claim Fails.**

This Court should grant summary judgment in favor of the Starke County Sheriff's Department on John Doe's *respondeat superior* claim because Detective Gray is immune and/or otherwise did not commit a tort that would subject it to liability. "The general rule is that vicarious liability will be imposed upon an employer under the doctrine of *respondeat superior* where the employee has inflicted harm while acting within the scope of employment." *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008). However, if the employee has not committed a tort, the employer is

23

not liable under *respondeat superior*. *See Zander v. Orlich*, 2017 WL 2928198, at *1 (N.D. Ind. July 10, 2017). Here, as discussed above, Detective Gray is immune for John Doe's IIED claim due the enforcement of a law and in the alternative, Detective Gray's conduct was not intentional, nor extreme and outrageous. As such, there is no underlying tort for which Starke County Sheriff's Department would be liable under *respondeat superior*. Therefore, summary judgment should be entered in the Starke County Sheriff's Department's favor.

## CONCLUSION

WHEREFORE, Defendants, ADAM GRAY and STARKE COUNTY SHERIFF'S DEPARTMENT, respectfully request that this Court grant their Motion for Summary Judgment in its entirety and/or for any relief deemed just and proper in the premises.

Respectfully Submitted,

/s/ Katlyn M. Christman
Katlyn M. Christman (#34670-64)

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for Defendants, ADAM GRAY, and
STARKE COUNTY SHERIFF'S DEPARTMENT
233 E. 84th Drive, Suite 301
Merrillville, IN 46410
219/322-0830; FAX: 219/322-0834
EMAIL: Kchristman@khkklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

- **Elizabeth A. Knight** – eknight@khkklaw.com
- **Katlyn M. Christman** – kchristman@khkklaw.com
- **Russell W Brown , Jr. -** rbrown@kbmtriallawyers.com, dwilliams@kbmtriallawyers.com
- **Alexander R. Carlisle -** alexander.carlisle@atg.in.gov

<u>MANUAL NOTICE:</u>  None.

/s/ Katlyn M. Christman

21-08-27 MSJ Memo 7238