UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN DOE and A.B., <br><br> Plaintiff, <br><br> v. <br><br> ADAM GRAY *et al.*, <br><br> Defendants. | CAUSE NO. 3:20-CV-129 DRL |

OPINION & ORDER

John Doe, born female and transitioning to male, says Detective Adam Gray of the Starke County Sheriff's Department disclosed John Doe's gender identity to A.B., his spouse who was allegedly unaware of it. John Doe also claims that Detective Gray shared this information with Katherine Purtee, a family case law manager at the Indiana Department of Child Services, who thereafter disclosed the information to A.B.'s children.

Detective Gray learned this information after arresting John Doe and A.B. and processing John Doe at the Starke County Jail on February 7, 2018, where the detective witnessed John Doe change his clothes. John Doe and A.B. sued the detective, case manager, and Starke County Sheriff's Department two years later alleging violations of the Fourth Amendment (unreasonable seizure), Fourteenth Amendment (right to privacy), and state law (intentional infliction of emotional distress). Discovery closed July 27, 2021. The defendants filed summary judgment on August 27, 2021.

From the outset, John Doe alleged that his "sexual preference" was inappropriately disclosed, though today he seeks to amend his complaint (rather than respond to the summary judgment motion) to clarify that it was actually his "gender identity." He offers no explanation why he waited over a year to do so—after a May 2021 letter from defense counsel requesting the case's dismissal, after a July 2021 email from defense counsel requesting the same, after responding to interrogatories in July 2021

that recognized the difference between "sexual preference" and "gender identity," after questions were posed to him at his July 2021 deposition on the same point, after an August 2021 communication from defense counsel again requesting the case's dismissal, and after the defendants filed for summary judgment in August 2021. Throughout the case, John Doe believed it unimportant to correct any unintended allegation until the rubber hit the road.

"Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Mach. Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). But "that does not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). "[C]ourts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Id.* (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). Justice favors the diligent.

The last day to amend under the scheduling order was August 27, 2020. John Doe thus must establish good cause for amending his complaint so late. *See* Fed. R. Civ. P. 16(b)(4); *Alioto v. Town of Lisbon*, 651 F.3d 715, 719-20 (7th Cir. 2011). The "primary consideration for district courts is the diligence of the party seeking amendment," *Alioto*, 651 F.3d at 720 (citing *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005)), and that is wholly absent here. The amendment is also prejudicial by altering the factual underpinning to the Fourteenth Amendment claim at this late date rather than just altering the legal theory based on facts that had already been pleaded. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859-60 (7th Cir. 2017); *see also Dubicz v. Commw. Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (recommending consideration of delay and prejudice together).

Moreover, the proposed amendment would be futile. *See Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). The defense invites the court to analyze futility under a summary judgment standard,

2

but at times the law resorts to the motion to dismiss standard. *See Brunt v. Seiu*, 284 F.3d 715, 720-21 (7th Cir. 2002); *Garcia v. City of Chi.*, 24 F.3d 966, 970 (7th Cir. 1994). Timing and the state of the record guide this determination. For instance, the summary judgment standard is appropriate when a summary judgment motion has been fully briefed, with its full record intact. *See, e.g., Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 914, 923 (7th Cir. 2007); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 856, 861-62 (7th Cir. 2001). The summary judgment record hasn't closed here, however.

"[W]hen the basis for denial is futility, [the court] appl[ies] the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and N.W. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015). To survive a challenge under Rule 12(b)(6), a complaint must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Given the absence of a summary judgment response, and the absence of any overt gamesmanship in inviting a more favorable standard in lieu of responding to the summary judgment motion, the court evaluates the request to amend under a dismissal standard.

That is no less appropriate when futility rests on a qualified immunity defense—a defense that otherwise is often addressed early in a case. *See Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000) (qualified immunity appropriate at pleading stage when "plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred"). The complaint contains four counts. Disclosure of John Doe's personal information stems from counts one and three, so the court assesses futility *vis-à-vis* these claims. Qualified immunity is a question of law based on a two-step inquiry: (1) whether the alleged conduct sets out a constitutional violation; and (2) whether the constitutional standards were clearly established at the time of the violation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

The court starts with the second requirement because it proves dispositive of count one. *See Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017). Clearly established law must be "particularized" to the facts of the case, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), such that "existing precedent . . . place[s] the statutory or constitutional question beyond debate," *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft*, 563 U.S. at 741). John Doe cannot simply say Detective Gray and Case Manager Purtee violated his Fourteenth Amendment right to privacy in generic terms and thereby overcome qualified immunity; instead, he must particularize the law to his facts. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018). He may point to "closely analogous cases" establishing the conduct as unlawful or may "demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." *Morrell v. Mock*, 270 F.3d 1090, 1100 (7th Cir. 2001).

John Doe cites no closely analogous cases to show that a Fourteenth Amendment right to keep his gender identity private from disclosure to his spouse or his spouse's children by state authorities was clearly established. He cites *Wolfe v. Schaefer*, 619 F.3d 782 (7th Cir. 2010), and *Denius v. Dunlap*, 209 F.3d 944 (7th Cir. 2000), but neither case supports his position. The former found no right to privacy in information that a candidate for office was under investigation, and the latter recognized the clearly established privacy right to medical information.

It isn't enough that Detective Gray and Case Manager Purtee would have known that disclosing medical information in some circumstances might be unconstitutional. *See Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995). John Doe must show that their specific conduct—disclosing an individual's gender identity to one's spouse or children during an investigation—would be unconstitutional under the circumstances. *See id.* General assertions are insufficient to overcome qualified immunity. *City of Escondido*, 139 S. Ct. at 503; *Anderson*, 72 F.3d at 523-24. Taking all the facts in the proposed amended complaint as true, no clear right has been established, and no showing has

been made that a reasonable state actor would know that what he or she was disclosing to these individuals was unconstitutional. *See also Wyatt v. Fletcher*, 718 F.3d 496, 508-10 (5th Cir. 2013) (granting qualified immunity on claim alleging information privacy to student's sexual orientation in meetings with parents). Amending the claim would be futile.

In count three, John Doe advances a state law claim of intentional infliction of emotional distress against Detective Gray for disclosing personal information—his gender identity as the amended complaint would propose. This amendment would be futile too because Detective Gray is immune personally and in his official capacity from such claim.

"A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). A plaintiff cannot sue a government employee "personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of employment." *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003). "Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) (citing Ind. Code § 34-13-3-5-(b) and *Julian v. Hanna*, 732 F.3d 842, 848-49 (7th Cir. 2013)). A government employee's conduct falls within the scope of his employment "if his purpose was, to an appreciable extent, to further his employer's business," *Higgason v. State*, 789 N.E.2d 22, 30 (Ind. Ct. App. 2003) (quotation and internal citations omitted), and John Doe alleges this explicitly in his proposed amended complaint. This claim is futile.

Detective Gray would also be immune in his official capacity. Under Ind. Code. § 34-13-3-3(8), "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of . . . a law . . . unless the act of enforcement constitutes false arrest or false imprisonment." Not everything a law enforcement officer does in the scope of his duties is enforcing a law, *see, e.g., Patrick v. Miresso*, 848 N.E.2d 1083, 1086-87

5

(Ind. 2006), but Detective Gray was enforcing the law by conducting an investigatory interview of two arrestees, *see Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1031-33 (N.D. Ind. 2014) (dismissing emotional distress claim when officers filed a police report); *see also Chapman v. Indiana*, 2014 U.S. Dist. LEXIS 63593, 10-12 (N.D. Ind. May 8, 2014) (dismissing emotional distress claim against officers for immunity); *Ashcraft v. City of Crown Point*, 2013 U.S. Dist. LEXIS 158003, 17-19 (N.D. Ind. Nov. 5, 2013) (dismissing emotional distress claim when officers were conducting a traffic stop). Thus, John Doe could not sue Detective Gray in his individual or official capacity for intentional infliction of emotional distress based on the disclosure of his gender identity.

## CONCLUSION

Accordingly, the court DENIES John Doe and A.B.'s motion to amend [ECF 58], DENIES AS MOOT the duplicative motion [ECF 56], GRANTS plaintiffs' second motion for extension of time for seven days after this order to file their summary judgment response [ECF 60], and ORDERS plaintiffs to file a joint response to both summary judgment motions [ECF 39, 43] by November 11, 2021, enlarging their page limit to 35 pages, if necessary.

SO ORDERED.

November 3, 2021         *s/ Damon R. Leichty*
                         Judge, United States District Court