UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN DOE and A.B. ) | |
| ) | |
|    Plaintiffs, ) | |
| ) | |
| vs. ) | CAUSE NO.: 3:20-CV-129 |
| ) | |
| ADAM GRAY, individually and in his ) | |
| Official capacity as officer of the Starke ) | |
| County Sheriff Department, KATHERINE ) | |
| PURTEE, and STARKE COUNTY ) | |
| SHERIFF DEPARTMENT ) | |
| ) | |
|    Defendants. ) | |

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, John Doe and A.B., by Counsel Russell W. Brown, Jr. files this Plaintiffs' Response Brief in Opposition of Defendants' Motion for Summary Judgment.

### I.    STATEMENT OF GENUINE DISPUTED MATERIAL FACTS

Plaintiff John Doe is a transgender male who was born female. (Purtee Ex. 9 at 35:18-19; 36:7-14). At all relevant times, Mr. Doe identified as a male. (Purtee Ex. 6 at No. 9). He had breast removal surgery at the age of nineteen but has not had any surgery to alter his genitals. (Purtee Ex. 9 at 38:9-12; 41:21 – 42:3; 36:20-37:1). A.B. is married to John Doe and did not know that he was born female or did not have a penis. (Gray Ex C, pp. 23-24).

On February 1, 2018, Defendant Purtee and Defendant Gray met with RM at Knox High School. (Pl. Ex. 4 at P. 1). During that meeting RM provided text messages between him and his mother, A.B. (Pl. Ex. 4 at P. 2). Text messages between RM and A.B. show that RM was not kicked out of the house. (Pl. Ex. 5 at P. 5). Additionally, text messages between RM and

A.B. show that RM only told the school that he was kicked out to "protect[] myself from run away charges." (*Id*. at P. 5-6). Additionally, RM was trying to negotiate with A.B. that he would return home only if he was not grounded. (*Id*. at P. 6-7). In Defendant Gray's police report, he states that "[RM] stated that since then he had no contact with his mother, and she has not tried to get him to come home, he did state that he has a message from earlier from her that read, 'come home and get on the couch your grounded.' [RM] stated that he did not even respond to her because she would not talk to him about things." (Pl. Ex. 6 at P. 4). Defendant Gray's report is contradicted by the text messages RM provided during his meeting with Defendant Gray and Defendant Purtee. (Pl. Ex. 4 at P. 2; Pl. Ex. 5 at 5-6).

On February 7, 2018, Defendant Purtee and Defendant Gray met with RM at the Starke County Sheriff's Department. (Pl. Ex. 3 P. 3). "Detective Gray interviewed RM about information he had received from a system search." (Id. at P. 3). The system search was the "CLEAR Report" which revealed that Mr. Doe was previously known as "Barbara B." (Gray Ex A ¶ 8).

On February 7, 2018, Mr. Doe and A.B. were arrested at their home and transported to the Starke County Jail. (Gray Ex. A ¶ 13). At the time of their arrest, children K.B., J.M., and A.M. were at the house. (Pl. Ex. 3 at P. 3). Defendant Purtee took custody of the children and attempted to obtain foster or kinship homes for them. (*Id*.). During the ride to the foster home, A.M. contacted her aunt, April Moore[1], who agreed to take custody of the girls. (*Id*.) Defendant Purtee advised that security checks needed to be completed and April agreed to get those completed the next day. (*Id*.).

---

[1] April Moore is A.B. biological sister.  Here name now is April Hopkins.

2

Defendant Purtee had a conversation with Ms. Moore.  (Pl. Ex. 1 ¶ 8).  During that conversation, Defendant Purtee said "you know she is a girl right?" or something to like effect.  (*Id*. at ¶ 9).  Based upon the conversation, Ms. Moore knew that Defendant Purtee was referring to Mr. Doe.  (*Id*. at ¶ 10).  Prior to this conversation with Defendant Purtee, Ms. Moore had no knowledge about Mr. Doe's biological sex, gender, sexual preference, genitalia, or similar information.  (*Id*. at ¶ 13).  Ms. Moore believed that Mr. Doe was a biological male.  (*Id*).

Additionally, after Mr. Doe's and A.B.'s arrest, Defendant Purtee was at Suzanne Brewer's house.  (Pl. Ex. 2 ¶ 8).  J.M, A.B.'s biological daughter, R.M., M.B., and Suzanne Brewer were all there.  (*Id*. at ¶ 8).  In J.M.'s presence, Defendant Purtee described what happened to Mr. Doe at the Starke County Jail.  (*Id*. at ¶ 9).  Defendant Purtee described that Mr. Doe was stripped searched on camera.  (*Id*. at ¶ 10).  Defendant Purtee further stated that Mr. Doe was not a male but was a female.  (*Id*. at 12).  Prior to Defendant Purtee making those statements, J.M. did not have any knowledge about Mr. Doe's biological sex, gender, sexual preference, genitalia, or similar information.  (*Id*. at ¶ 13).  Rather, J.M. believed that Mr. Doe was a biological male.  (*Id*. at ¶ 14).

## II.   LAW AND ARGUMENT

### A.  Summary Judgment Standard

To be successful on their Motion, the Defendants must show the court that the evidence would convince a jury to accept their version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d  892, 901 (7th Cir. 2005).  The Defendants are only entitled to summary judgment if no reasonable jury could return a verdict for the Plaintiff.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The court views all evidence in light most favorable to the Plaintiffs and draws all reasonable inferences in their favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th

Cir. 2008). Any doubt as to the existence of a genuine issue of material fact is resolved against the Defendants. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

### B. Constitutional Right to Privacy

The constitution provides a right to informational privacy of highly personal information. *Chasensky v. Walker*, 740 F.3d 1088, 1095-96 (7th Cir. 2014) (citing *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010)). "The court of appeals, including this court, have interpreted *Whalen* to recognize a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information – information that most people are reluctant to disclose to strangers – and have held that the right is defeasible only upon proof of a strong public interest in access to or dissemination of the information." *Wolfe*, 619 F.3d at 785 (citing *Denius v. Dunlap*, 209 F.3d 944, 955-958 (7th Cir. 2000). Mr. Doe's transgender status and/or gender identity is sexual, highly personal information, that enjoys constitutional protection.

A dispute in material facts exist on whether Defendant Purtee disclosed Mr. Doe's transgender status and/or gender identity. April Moore's declaration states that during a phone conversation, Defendant Purtee said "you know she is a girl right?" (Pl. Ex. 1 ¶ 9). Ms. Moore knew, based upon the conversation, Defendant Purtee was referring to Mr. Doe. (*Id*. at ¶ 10). Additionally, J.M.'s declaration establishes that while at Suzanne Brewer's house, Defendant Purtee said that Mr. Doe was stripped searched at the Starke County Jail and that he was a female, not a male. (Pl. Ex. 2 ¶¶ 9, 10, 12). Suzanne Brewer, her son M.B. and J.M.'s brother, R.M., were all present when Defendant Purtee described what happened to Mr. Doe. (Pl. Ex. ¶ 8). On the other hand, Defendant Gray admits, and its on camera, that he told A.B. during her interview that Mr. Doe was born female and that he did not have a penis. (Gray Ex. A ¶ 21).

4

Furthermore, a dispute in material fact exists in whether Defendant Purtee or Defendant Gray had any legitimate Government interest to *disclose* this information. In her Motion for Summary Judgment, Defendant Purtee cites to Indiana law that permits her access to this information. (DE 40 at P. 13). However, just because Indiana law permits Defendant Purtee to gain this information, does provide her legitimate reasons to *disclose* the information. Defendant Purtee does not provide any basis for her disclosure of the confidential information. There is not one.

Defendant Gray's "legitimate government interest" is that he made the disclosures while "investigating and preventing possible sexual misconduct." (DE 44 P. 9). Mr. Doe is confused on how the fact that he is born female and does not have a penis has any relevance to Defendant Gray "investigating and preventing possible sexual misconduct." Surely Defendant Gray is not suggesting that Mr. Doe's transgender status has any bearing on his investigation or prevention of sexual misconduct. Regardless, whether Mr. Doe's transgender status is relevant to Defendant Gray's investigation, does not provide a legitimate government interest for him to *disclose* that information. Therefore, a dispute of material fact exists on whether Defendant Gray and Defendant Purtee violated Mr. Doe's constitutional right to privacy and this Court should deny Defendants' respective Motions for Summary Judgment.

### C. Defendants Gray and Purtee are not Entitled to Qualified Immunity

Qualified immunity shields officers from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7th Cir. 2005). Resolution of qualified immunity should be resolved at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 (1987). However, the qualified immunity determination should be submitted to the jury

where material factual disputes preclude resolution of the issue as a matter of law. See, e.g., *Morfin v. City of E. Chi.*, 349 F.3d 989, 999 (7th Cir. 2003) (reversing summary judgment in a false arrest case where disputed facts are material to qualified immunity issue, noting the Court "cannot determine as a matter of law, what predicate facts exist to decide whether or not the officers' conduct clearly violated established law").

A 2-part test has been established to determine whether a government official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The threshold inquiry is whether, taken in the light most favorable to the Plaintiff, the facts alleged show the officer's conduct violated a constitutional right. *Id.* The court then examines whether the right was clearly established. *Id.* at 201[2]. "The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted." *Payne*, 337 F.3d at 775-76. "In determining whether a right is 'clearly established', we look first to controlling precedent on the issue from the Supreme Court and from this circuit." *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010). In the absence of controlling precedent, the court looks at relevant case law in order to determine "whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Jacobs v. City of Chicago¸* 215 F.3d 758, 766 (7th Cir. 2000). "[A] case directly on point is not required for a right to be clearly established and "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Phillips v. Community Ins. Corp*, 678 F.3d 513, 528 (7th Cir. 2012) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

---

[2] The sequence of the *Saucier* protocol is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As early as 2010, Defendant Gray and Defendant Purtee were put on notice that citizens enjoy a constitutional right to privacy of *sexual* information. See e.g. *Wolfe*, 619 F.3d at 785. (*emphasis* added). Clearly, Mr. Doe's transgender status – born female and does not have a penis – is sexual information. Additionally, there is a clear trend in the case law toward constitutional protections for the LGBTQ community. In 2003 the Supreme Court struck down a state statute that criminalized homosexual sodomy. *Lawrence v. Texas*, 539 U.S. 558 (2003). In 2013, the Supreme Court declared unconstitutional the definition that marriage is only between one man and one woman. *United States v. Windsor*, 570 U.S. 744 (2013). In 2015 the Supreme Court established that same sex couples cannot be deprived of the right to marry. *Obergefell v. Hodges*, 576 U.S. 644 (2015). Moreover, it is clear that there is a constitutional right to privacy of medical records and communications. *Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000) (citing *Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995); *Schail v. Tippecanoe County Sch. Corp.*, 864 F.2d 1309, 1322 (7th Cir. 1989)). Mr. Doe's transgender status clearly implicates medical information as well. If he was born female and no longer has breasts, then it is clear that he had breast removal surgery. If he was born female and has facial hair and a deeper voice, it is clear that he has taken or takes hormones to achieve that appearance. Finally, if he identifies as a male, but does not have a penis, it is clear that he has not had any genitalia surgery.

Based upon the current state of the law and the trend in case law regarding one's constitutional right to privacy, Defendant Gray and Defendant Purtee were on notice that disclosing Mr. Doe's transgender status and/or gender identity without any legitimate reasons was unlawful. Therefore, Defendant Gray and Defendant Purtee are not entitled to qualified immunity.

D.  **Defendant Gray Did not Have Probable Cause to Arrest John Doe or A.B.**

"Probable cause to justify an arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013).  Analyzing whether an officer had probable cause is an objective inquiry; the officer's subjective beliefs and state of mind are irrelevant.  *Whren v. United States*, 517 U.S. 806, 813 (1996).  The existence of probable cause depends on the elements of the predicate criminal offense as defined by state law.  *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).  Determining whether probable cause existed is typically left to the fact-finder; however, if the facts are undisputed, the court can make that determination on summary judgment.  *Abbott*, 705 F.3d at 714.  "The probable cause determination must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them."  *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) (internal citations omitted).

In the present case, Mr. Doe and A.B. were arrested for Neglect of a Dependent under Indiana Code § 35-46-1-4(a)(3) and Nonsupport of a Dependent Child under Indiana Code § 35-46-1-5(a).  (Pl. Ex. 6 P.1).  Neglect of a Dependent is defined by Indiana law as follows:

A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

…

(3) deprives the dependent of necessary support

Commits neglect of a dependent, a Level 6 Felony.

8

Ind. Code § 35-46-1-4(a)(3). Nonsupport of a Dependent Child is defined by Indiana law as follows:

A person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child, a Level 6 felony.

Ind. Code § 35-46-1-5(a). There is a dispute in material facts on what Defendant Gray knew at the time he arrested Mr. Doe and A.B. During the interview of R.M. with Defendant Purtee, R.M. provided text messages. These text messages between RM and A.B. show that RM was not kicked out of the house. (Pl. Ex. 5 at P. 5). Additionally, text messages between RM and A.B. show that RM only told the school that he was kicked out to "protect[] myself from run away charges." (*Id*. at P. 5-6). Additionally, RM was trying to negotiate with A.B. that he would return home only if he was not grounded. (*Id*. at P. 6-7). Based upon those messages, Defendant Gray knew that R.M. was not kicked out of the house, but only reported that to protect himself from charges. Defendant Gray knew that R.M. was told to return home, but refused to do so because he would be grounded. The totality of the circumstances Defendant Gray knew at the time he arrested John Doe and A.B. did not establish probable cause. There exists a difference of opinion on the facts Defendant Gray knew and the reasonable inferences that can be drawn therefrom. Therefore, whether probable cause existed should be determined by a jury.

### E. Defendant Gray is Not Entitled to Qualified Immunity

As stated above a qualified immunity determination should be submitted to the jury where material factual disputes preclude resolution of the issue as a matter of law. See, e.g., *Morfin*, 349 F.3d at 999. Here there are material factual disputes on what information Defendant Gray knew at the time he arrested John Doe and A.B. Therefore, a jury should decide whether or

9

not Defendant Gray violated a clearly established federal right when he arrested Mr. Doe and A.B.

Furthermore, advice of counsel does not entitle Defendant Gray to qualified immunity. As Defendant Gray correctly points out, advise of counsel has been determined to be an "extraordinary circumstance" that could warrant application of qualified immunity. *Davis v. Zirkelbach*, 149 F.3d 614, 620 (7th Cir. 1998). However, Defendant Gray failed to provide Chief Deputy Prosecutor Mary Ryan with all the information he knew at the time. Defendant Gray's report, which he provided to Chief Deputy Prosecutor Mary Ryan and was attached to his probable cause affidavit, did not contain the information contained in R.M.'s text conversation with A.B. (Pl. Ex. 6). There is a dispute in material facts that had Defendant Gray told Chief Deputy Prosecutor Ryan that R.M. only made the allegations that he was kicked out to protect himself from charges, was told to come back home and refused, and was not actually kicked out, that she still would have advised him that probable cause existed for Mr. Doe's and A.B.'s arrest. Therefore, this Court should deny Defendant Gray's Motion for Summary Judgment.

    F.    **Defendant Gray is Not Entitled to Immunity Under ITCA[3]**

Defendant Gray argues that he is immune from disclosing Mr. Doe's private information because he was doing so as a result of "the adoption and enforcement of a law." (DE 44 P. 20-21). As argued above, Defendant Gray did not have any reason to *disclose* that Mr. Doe was born female and did not have a penis while investigating claims of sexual assault. He was not adopting or enforcing a law when he *disclosed* Mr. Doe's extremely personal information to A.B. Therefore, he is not immune under the ITCA.

---

[3] Plaintiffs concede that Defendant Gray is entitled to immunity under ITCA in his individual capacity

G. **Defendant Gray's Conduct was Intentional, Reckless, Extreme and Outrageous**

There is a dispute in material fact on whether Defendant Gray disclosing that Mr. Doe was born female and did not have a penis to A.B., information that A.B. did not previously know, was intentional or reckless. Despite Defendant Gray's attempts, he cannot provide any reasonable justification for disclosing this information. Additionally, it is clear that Defendant Gray personally does not like or agree with those that are transgender. (Pl Ex. 7). Therefore, absent a reasonable reason, coupled with his personal feelings, reasonable inferences can be made that he disclosed the information intentionally or recklessly which precludes the entry of summary judgment.

Furthermore, there is a material dispute on whether disclosing extremely personal information, which was received during his investigation as a law enforcement officer, is extreme and outrageous. Again, Defendant Gray does not have any reasonable, legitimate explanations on why he disclosed Mr. Doe's extremely personal information. A jury could reasonably find his conduct to be extreme and outrageous and, therefore; this Court should deny his motion for summary judgment.

H. **Respondeat Superior Claim Survives**

Mr. Doe concedes that if his claim of Intentional Infliction of Emotional Distress fails, then this claim also fails. However, as argued above, there is a dispute in material fact on whether Defendant Gray committed Intentional Infliction of Emotional Distress and, therefore; the Court should deny Defendant Starke County's motion for summary judgment on this claim.

### III.   CONCLUSION

Based upon the foregoing law and analysis, Plaintiffs pray that this Court deny Defendants' Motion for Summary Judgment and for all other just and proper relief.

> Respectfully submitted,
>
> s/ Russell W. Brown, Jr.
> Russell W. Brown, Jr. #29628-64
> 9211 Broadway
> Merrillville, IN 46410
> (219) 769-6300
> FAX:  (219) 769-0633
> rbrown@kbmtriallawyers.com

CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2021, I electronically filed the foregoing Plaintiff's Response Brief in Opposition to Defendant's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record in this matter, all of whom are CM/ECF participants.

> s/ Russell W. Brown, Jr.
> Russell W. Brown, Jr.