1200/18-7238.SC/kmc/mj

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| JOHN DOE and A.B., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Cause No.: 3:20-cv-129-DRL-MGG |
| ADAM GRAY, individually and in his Official capacity as officer of the Starke County Sheriff Department, KATHERINE PURTEE, individually and in her official capacity as Family Case Manager with the Indiana Department of Child Services, STARKE COUNTY SHERIFF DEPARTMENT, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS ADAM GRAY AND STARKE COUNTY SHERIFF'S DEPARTMENT'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Defendants Detective Gray and Starke County Sheriff's Department filed a Motion for Summary Judgment and accompanying Memorandum ("initial Memorandum") seeking summary judgment on all of Plaintiffs' claims. [DE # 43-44]. Plaintiffs filed their Response Brief in Opposition of Defendant's [*sic*] Motion for Summary Judgment ("Response"). [DE #64]. Plaintiffs failed to come forward with any evidence to preclude the entry of summary judgment as a matter of law in favor of Detective Gray and Starke County Sheriff's Department. Specifically, Plaintiffs, despite proffering seven exhibits, have not come forward with any *relevant* and *admissible* evidence that would create an issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Thus, as Plaintiffs have done nothing more than rely on their pleadings in response to these Defendants' summary judgment, which is expressly prohibited, Plaintiffs cannot defeat the entry of summary judgment in these Defendants' favors. *See id.* As set forth in more

1

detail below and as argued in Detective Gray and Starke County Sheriff's Department's initial Memorandum, this Court should grant these Defendants' Motion for Summary Judgment.

## ARGUMENT

Summary judgment should be granted in these Defendants' favor because no genuine issue of material fact exists. Plaintiffs' proffered exhibits do not create a genuine issue of material fact as the exhibits are either inadmissible, are lacking in foundation, or are irrelevant and otherwise do not create a material issue of fact. In particular, Plaintiffs' Exhibits 1 and 2 – the declarations of April Hopkins and J.M. – are rank hearsay, as they contain out of court statements that are being offered for the truth of the matter asserted, and do not fall into any hearsay exceptions. *See* Fed. R. Evid. 801(c). Similarly, Plaintiffs' Exhibits 3 and 4 – Department of Child Services records – lack foundation without any testimony as to who prepared the documents, how they were prepared, how they were stored, etc. and are otherwise hearsay being offered for the truth of the matter asserted, without any recognize hearsay exception. *See* Fed. R. Evid. 901; Fed. R. Evid. 801(c).

Moreover, Plaintiffs' Exhibits 5 and 7 – screenshots of text messages and screenshots of Facebook posts – similarly lack foundation without any explanation as to the authenticity or identification of the documents and the exhibits are otherwise irrelevant to the claims asserted given that probable cause is governed by an objective standard as to the information that the officer knew at the time, not what could have been known and similarly irrelevant to the state law claims and Detective Gray's state of mind, as discussed below. *See Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). Plaintiffs' Exhibit 6 – the criminal information, affidavit of probable cause, and police report – does not create a genuine issue of material fact and cannot defeat probable cause or summary judgment in these Defendants' favor. As stated above, due to these evidentiary problems, Plaintiffs have rested on their pleading in an attempt to overcome summary judgment, which is prohibited and otherwise insufficient. *See Celotex Corp.,* 477 U.S. at 322. For

the reasons discussed below, summary judgment should be entered in Detective Gray and Starke County Sheriff's Department's favor on all of Plaintiffs' claims.

I. **JOHN DOE'S FOURTEENTH AMENDMENT PRIVACY CLAIM FAILS.**

**A. Detective Gray Did Not Disclose John Doe's Sexual Preference.**

This Court should grant summary judgment in Detective Gray's favor because there is no genuine issue of material fact that Detective Gray did not disclose John Doe's sexual preference. John Doe's Fourteenth Amendment claim is premised on the disclosure of his "sexual preference," which by his own definition is "who [he] is attracted to" (females) and "being transgender has nothing to do with sexual preference." [Doe Deposition, pp. 82-83, 126]. The undisputed facts establish that Detective Gray told A.B., John Doe's wife, that John Doe was born Barbara B., that he was born female, and he did not have a penis. [Gray Affidavit, ¶ 21; A.B. Deposition, pp. 23-24; Doe Deposition, p. 125]. It is also undisputed that Detective Gray did not know and therefore did not tell anyone that John Doe was attracted to females, which John Doe did not dispute. [Gray Affidavit, ¶¶ 29-30; Doe Deposition, pp. 127-129].

However, John Doe spends the entirety of his argument on the Fourteenth Amendment claim in his Response impermissibly altering the factual underpinning of his claim by asserting the privacy right was to his transgender status and/or gender identity, which the Court expressly denied John Doe's request to amend his Complaint to do so. [DE #64, pp. 4-5; DE #63]. In so doing, John Doe does not even acknowledge that Detective Gray did not disclose his sexual preference to anyone. [DE #64]. When a party fails to address an argument in its briefing on summary judgment, the argument is deemed a waiver. *Cruse v. Hook-Superx, Inc.*, 561 F. Supp. 2d 993, 1001 (N.D. Ind. 2008) (citing *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 867 (7th Cir. 2008) and *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005)). Further, the district

3

court is "not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). As such, this Court is not required to search the record for evidence that supports John Doe's argument, John Doe's failure constitutes a waiver, and therefore, summary judgment should be entered in Detective Gray's favor on John Doe's Fourteenth Amendment claim.

### B. Detective Gray Did Not Violate John Doe's Constitutional Rights.

In the event that the Court finds that a Fourteenth Amendment right to privacy claim survives, summary judgment should still be entered in Detective Gray's favor because a constitutional right to privacy of one's birth name, sex, and anatomy does not exist, Detective Gray did not disclose protected information to the public (as the disclosure was limited to the conversation with his wife, A.B., as noted above), Detective Gray's disclosure served a legitimate law enforcement purpose, and Detective Gray otherwise did not disclose any of John Doe's private information to anyone. As previously mentioned, John Doe has impermissibly referred to his sexual preference as his transgender status and/or gender identity, to argue that same are entitled to constitutional protection as "sexual, highly personal information" and the Court should disregard same. [DE #64, p. 4].

Regardless, the undisputed evidence establishes that Detective Gray told A.B. that John Doe was born Barbara B., that he was born female, and he did not have a penis. [Gray Affidavit, ¶ 21; A.B. Deposition, pp. 23-24; Doe Deposition, p. 125]. As such, John Doe must come forward with evidence that a privacy interest in an individual's birth name, sex, and anatomy exists and John Doe did not do so. [DE #64, pp. 4-5]. Instead, John Doe attempts to characterize his right as one of privacy to sexual information or medical information. [DE #64, pp. 4-5]. However, such attempts fail.

4

The right to privacy of sexual information has been interpreted as applying to one's sexual proclivities or activities in common law and as to sexual and reproductive rights of the use contraceptives, the right to an abortion, and the right to engage in homosexual acts under the Constitution. *See Wolfe*, 619 F.3d at 784. This privacy right is wholly inapplicable as the disclosure made undisputedly does not relate to John Doe's sexual proclivities, sexual activities, use of contraceptives, abortion rights, nor homosexual acts. Moreover, the right to privacy of medical information has been applied to the disclosure of prescribed medications, diagnoses, and medical records, none of which are implicated here. *See Whalen v. Roe*, 429 U.S. 589, 599-600 (1977) (suggesting that there may be a right to nondisclosure of certain private information, while upholding a law permitting the names and addresses of individuals prescribed certain drugs in a database); *Anderson v. Romero*, 72 F.3d 518 (7th Cir. 1995) (finding that medical records and communications, specifically the diagnosis of HIV, was a recognized qualified constitutional right); *Denius v. Dunlap*, 209 F.3d 944 (7th Cir. 2000) (acknowledging the right to privacy of medical information as to the release of medical records or communications). Instead, as mentioned above, John Doe cannot establish that there is a constitutional right to privacy of his birth name, sex, and anatomy and summary judgment should be entered in Detective Gray's favor.

Assuming *arguendo* that such a right existed, Detective Gray did not violate this right as the disclosure was made to John Doe's spouse, who unquestionably and undisputedly does not constitute the "public." In other words, the right to privacy is only violated if the protected information is disclosed *to the public*, which was not done here. *See Whalen*, 429 U.S. at 599 n. 24. Again, John Doe does not address this argument, and as such, has waived the argument to the contrary. [DE #64; *see Cruse*, 561 F. Supp. 2d at 1001]. Similarly, John Doe does not respond to the argument that Detective Gray did not disclose that John Doe was born female, did not have

5

male genitalia, or John Doe's sexual preference to Katherine Purtee, Ronald McClusky Jr., or R.M., which constitutes a waiver. [DE #64]. Regardless, John Doe's sworn testimony that he did not have any evidence that Detective Gray told Purtee, Ronald McClusky Jr., or R.M. anything constitutes an admission by a party-opponent. Fed. R. Evid 802(d)(2)(A); Doe Deposition, pp. 127-129. This admission of a party-opponent combined with Detective Gray's sworn affidavit affirming that no such disclosures occurred, conclusively establishes that no material issue of fact exists. [Gray Affidavit, ¶¶ 31-33]. John Doe's inability to establish a material issue of fact is fatal and dispositive as to his claims of disclosure to Purtee, Ronald McClusky Jr., or R.M., warranting summary judgment in favor of Detective Gray.

Moreover, if a right to privacy in his birth sex, name, and anatomy exists, the disclosure of the information by Detective Gray was in the context of a criminal investigation. A right to privacy can be overcome by a sufficiently strong state interest—here, to investigate and prevent potential sexual misconduct perpetrated by John Doe onto children. *Denius*, 209 F.3d at 956; Gray Affidavit, ¶ 21. It is unquestionable that investigating and stopping potential sexual misconduct perpetrated on children is a strong state interest that outweighs any allegedly constitutionally protected information. Further, it is important to note that Detective Gray made the disclosure of John Doe's birth sex, name, and anatomy to A.B. in the context of discussing an unrelated issue to the sexual misconduct, specifically falsifying birth certificate records, and after A.B. denied John Doe had perpetrated the sexual abuse. [A.B. Interview]. Tactics such as those employed by Detective Gray, inquiring as to an unrelated instance in which it was clear that John Doe and A.B. were lying about something (the birth certificate of their child, K.B. named John Doe as the father, which is biologically impossible), in order to determine if A.B. was lying about the sexual misconduct perpetrated by John Doe, were utilized to further a strong state interest in investigating

6

and stopping the sexual abuse of children.[1] [A.B. Interview]. Thus, the disclosure furthered a strong state interest, which was sufficient to overcome any alleged constitutional protection that John Doe had in the information and summary judgment should be entered in Detective Gray's favor.

### C. Detective Gray is Otherwise Entitled to Qualified Immunity.

In the event the Court finds that there is a question of fact as to whether Detective Gray violated an existing constitutional right to privacy of John Doe's, Detective Gray is entitled to qualified immunity. In particular, it was not clearly established that a Fourteenth Amendment right existed to preclude the disclosure of an individual's birth name, sex, and anatomy to that individual's spouse. A police officer is entitled to qualified immunity unless they (1) violated a constitutional right and (2) the unlawfulness of their conduct was clearly established at the time. *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018). The plaintiff bears the burden of pointing to clearly established law particularized to the facts of the case at hand. *White v. Pauly*, 137 S.Ct. 548, 552 (2017). Plaintiff has the burden of proof to establish both elements of the qualified immunity defense. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999).

In other words, John Doe must point to a closely analogous case that establishes it was unconstitutional for Detective Gray to have disclosed his birth name, sex, and anatomy to his spouse. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995). John Doe has failed to do so. John Doe points to *Wolfe v. Schaefer* and *Denius v. Dunlap* in support of his argument that Detective Gray is not entitled to qualified

---

[1] John Doe harshly mischaracterizes Detective Gray's argument that the disclosure was made in the course of the investigation of sexual misconduct as "suggesting that Mr. Doe's transgender status has any bearing on his investigation or prevention of sexual misconduct." [DE #64, p. 5]. Detective Gray has never argued that John Doe's transgender status has any relation to sexual misconduct allegations, but that the disclosure was made to further the criminal investigation and the purpose of evaluating whether A.B. was lying, as discussed above.

immunity, as his transgender status is allegedly sexual information and medical records and communications. [DE #64, p. 7]. Neither of these cases demonstrate that John Doe possessed a clearly established right in the privacy of his birth name, sex, and anatomy.

In particular, although John Doe attempts to argue the contrary, *Wolfe* does not stand for the proposition that the United States Supreme Court or the Seventh Circuit has recognized a privacy right in sexual information.[2] *Wolfe v. Schafer*, 619 F.3d 782 (7th Cir. 2010). Rather, the Seventh Circuit in *Wolfe* cited to several courts of appeals decisions to support the proposition that since *Whalen* the courts of appeals have recognized other areas of privacy. *Id*. at 785. The only Seventh Circuit cases that *Wolfe* cited to – *Denius* and *Anderson v. Romero* – established privacy rights in *medical* information, not sexual information. *Id*.; *see Denius v. Dunlap*, 209 F.3d 944, 956-58 (7th Cir. 2000) (finding that there is privacy right to medical information and financial information); *Anderson v. Romero*, 72 F.3d 518, 521-22 (7th Cir. 1995) (finding the right to privacy in medical information was clearly established). Neither *Wolfe* nor *Denius* nor *Anderson* demonstrate that Detective Gray's specific conduct – disclosing that John Doe was born Barbara B., he was born female, and that he did not have a penis to John Doe's wife– was unconstitutional at the time of the disclosure.

John Doe implicitly concedes the lack of such authority, as not only does he fail to cite to any closely analogous cases that demonstrate such a right of privacy exists, but he argues that there is "a clear trend in the case law toward constitutional protections for the LGBTQ community," which is what a court will look at when no controlling authority exists. [DE #64, p. 7; *see Denius*, 209 F.3d at 951]. However, the cases that John Doe cites do not address a constitutional right to

---

[2] Regardless, sexual information has been interpreted in common law as one's sexual proclivities or activities and to apply to the sexual and reproductive rights of the use contraceptives, the right to an abortion, and the right to engage in homosexual acts under the Constitution. *See Wolfe*, 619 F.3d at 784.

8

privacy in the information that was disclosed here. [*See* DE #64, p. 7 (citing *Lawrence v. Texas*, 539 U.S. 558 (2003); *United States v. Windsor*, 570 U.S. 744 (2013); *Obergefell v. Hodges*, 576 U.S. 644 (2015))].

Further, there are no cases that establish a clear trend such "that [the court] can say with fair assurance of the right by a controlling precedent was merely a question of time." *Denius*, 209 F.3d at 951. Instead, the cases cited by John Doe suggest a trend for the protection of homosexual individuals, which does not apply here, as John Doe testified he is a straight male. [Doe Deposition, p. 83]. As such, there is no clear trend that would lead this Court to say with "fair assurance" that the right to privacy in an individual's birth name, sex, and anatomy "was merely a question of time." *Denius*, 209 F.3d at 951. Therefore, Detective Gray is entitled to qualified immunity as John Doe has failed to meet his burden of proof (which rests upon him in this Circuit) to show that Detective Gray's specific conduct violated a clearly established constitutional right and summary judgment should be entered in Detective Gray's favor. *See Spiegel*, 196 F.3d at 725.

## II. JOHN DOE AND A.B.'S FALSE ARREST CLAIMS FAIL BECAUSE PROBABLE CAUSE EXISTED TO ARREST PLAINTIFFS AND DETECTIVE GRAY IS OTHERWISE ENTITLED TO QUALIFIED IMMUNITY.

### A. Probable Cause Existed for Plaintiffs' Arrests.

This Court should grant summary judgment in Detective Gray's favor on Plaintiffs' false arrest claims because probable cause existed for their arrests. Plaintiffs argue that there is a question as to what information Detective Gray had to form his belief as to probable cause, therefore, allegedly precluding summary judgment. While a court is required to construe the pleadings in a light most favorable to the nonmoving party, the court is "not required to draw every conceivable inference from the record and mere speculation or conjecture will not defeat a summary judgment motion." *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) (internal

9

citations and quotations omitted). "When an officer receives information from a third party whom it seems reasonable to believe is telling the truth, the officer has probable cause to effectuate an arrest." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 302 (7th Cir. 2011). "Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters." *Id*. Probable cause can be determined as a matter of law if the underlying facts supporting the probable cause determination are not disputed. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).

Here, summary judgment can be granted as a matter of law in favor of Detective Gray because the underlying facts supporting probable cause are not in dispute. Plaintiffs rely on nothing more than speculation as to the information Detective Gray had to form his belief as to the existence of probable cause and the information Detective Gray received came from third parties from whom it was reasonable to believe and therefore it did not matter if the information received was the truth. In particular, Plaintiffs present text messages that purportedly "show that RM was not kicked out of the house." [DE #64, p. 9; DE #64-5]. However, Plaintiffs rely on nothing more than speculation that Detective Gray received these particular messages. The documents that Plaintiffs rely on simply state that text messages were produced, but do not specify the text messages that were produced. [*See* DE #64-4, p. 2]. Further, as stated above, Plaintiffs cannot rely on these documents in an attempt to preclude summary judgment because Plaintiffs lack foundation to admit the documents into evidence and otherwise are being offered for the truth of the matter asserted, without a recognized hearsay exception. As such, summary judgment is appropriate as a matter of law in favor of Detective Gray.

Regardless, the undisputed evidence establishes that Detective Gray learned from R.M. during the course of two interviews of the following text messages:

- John Doe texted R.M. and told him that he lied, that he had not changed, and that he could stay at M.B.'s house because he was out of the house.

- When R.M. texted A.B. about him being kicked out, A.B. said to deal with it.

- R.M. received a text from A.B. telling him to come home and get on the couch because he was grounded.

[Gray Affidavit, ¶¶ 4(g), 9(a)-(b)].[3]  In addition to the above-referenced text messages, Detective Gray learned the following additional information:

- After learning that R.M. knew about his sister sneaking out of the house, John Doe told R.M. to leave, to not come home, and that he could stay at M.B.'s house ("the Brewer house").

- As a result, R.M. stayed at his friend M.B.'s house starting around January 22, 2018 through and including the last interview date, February 7, 2018.

- A.B. brought food to the Brewer house once.  A.B. left the food on the porch and did not give it to R.M. or Suzanne Brewer, M.B.'s mother.

- R.M. did not respond to the text message from A.B. telling him to come home because he was grounded and he did not go home.  Aside from that text, R.M. did not have any other contact with A.B.

- John Doe and A.B. did not provide R.M. with any money during the time he was staying at the Brewer house.

- R.M. picked up his clothes from John Doe and A.B.'s house.

---

[3] Co-Defendant Katherine Purtee contacted Detective Gray because Purtee received a call about R.M., who was allegedly abandoned by his mother and Purtee requested that Detective Gray go with her to meet R.M.  [Gray Affidavit, ¶¶ 3-4].

11

- John Doe and A.B. did not contact the school, Department of Child Services, nor the police about R.M.

[Gray Affidavit, ¶¶ 4-5, 9]. This information was corroborated by Suzanne Brewer (the mother of the house where R.M. was staying) who confirmed that R.M. was staying at the Brewer house, that A.B. and John Doe had not given her any money to support R.M., that A.B. had not called her to check on R.M., and A.B. left a small bag of food on her porch. [Gray Affidavit, ¶ 10; Suzanne Brewer Letter]. All of this information would lead a prudent person with reasonable caution to believe that John Doe and A.B. had committed or were committing neglect of a dependent and non-support of a dependent.[4] This is because it is reasonable to believe that both R.M. and Suzanne Brewer were telling the truth, as R.M. was the victim of the crime and Suzanne Brewer was caring for R.M. and both of their reports of R.M. staying at the Brewer house and John Doe and A.B.'s behavior matched, which gave Detective Gray probable cause to arrest. *See Gower v. Vercler*, 377 F.3d 661, 668-69 (7th Cir. 2004); *Sow*, 636 F.3d at 302. Since these witnesses are reliable and because Detective Gray can rely on hearsay information from such witnesses in informing his determination of probable cause, Plaintiffs' false arrest claims premised on the absence of probable cause fail. *See Woods v. City of Chicago*, 234 F.3d 979, 986-87 (7th Cir. 2000).

In an attempt to defeat summary judgment, Plaintiffs improperly place too much emphasis on one piece of information (the text messages), ignoring the fact that the court will view the "totality of the circumstances – the whole picture – not each fact in isolation" in determining probable cause. *U.S. v. Rees*, 957 F.3d 761, (7th Cir. 2020) (citing *District of Columbia v. Wesby*, 138 S.Ct. 577, 588 (2018)) (internal quotations omitted). Assuming *arguendo* that Detective Gray

---

[4] An individual commits neglect of a dependent (a level 6 felony) if said "person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, [] knowingly or intentionally deprives the dependent of necessary support." Ind. Code § 35-46-1-4(a)(3). An individual commits non-support of a dependent if they "knowingly or intentionally fail[] to provide support to the person's dependent child…." Ind. Code § 35-46-1-5(a).

12

did receive all of the text messages in Plaintiffs' Exhibit 5, the text messages do not defeat the determination of probable cause that A.B. and John Doe had committed or were committing neglect of a dependent and non-support of a dependent.  In particular, "Nothing suggests that a victim's report must be unfailingly consistent to provide probable cause….We refuse to require law enforcement officers to delay arresting a suspect until after they have conclusively resolved each and every inconsistency or contradiction in a victim's account." *Spiegel*, 196 F.3d at 725 (internal citations omitted).  Thus, even if Detective Gray did receive the text messages that Plaintiffs allege show that R.M. was not kicked out of the house, Detective Gray was not required to resolve this alleged inconsistency in R.M.'s account at the probable cause stage.

Taking into consideration the totality of the circumstances, this one purported inconsistency would not defeat summary judgment, given the additional information learned from R.M. (concerning the circumstances of R.M. leaving the house, R.M. not staying at A.B. and John Doe's house, the lack of money and food provided to R.M., the lack of contact from John Doe or A.B.), the corroboration from Suzanne Brewer, and the fact that neither John Doe or A.B. reported the situation to the school, the Department of Child Services, or the police.  Therefore, based on the totality of the circumstances, including the texts in Plaintiffs' Exhibit 5, it was reasonable for Detective Gray to believe that John Doe and A.B. committed and/or were still committing neglect of a dependent and non-support of a dependent as to R.M.[5]  Thus, there is no question of material fact that probable cause existed for Plaintiffs' arrests and this Court should enter summary judgment in Detective Gray's favor as a matter of law.

---

[5] Additionally, it is important to note that John Doe and A.B. were not found innocent of the crimes, but instead entered a deferred prosecution on the charges of neglect of a dependent and non-support of a dependent.

### B. Detective Gray is Entitled to Qualified Immunity for Plaintiffs' False Arrest Claims.

In the alternative, this Court should grant summary judgment in favor of Detective Gray because he is entitled to qualified immunity as he did not violate a clearly established right and he relied on advice of counsel for the arrests of Plaintiffs. Plaintiffs argue that the issue of qualified immunity should be decided by a jury as there is allegedly a question as to what information Detective Gray knew at the time he arrested John Doe and A.B. [DE #64, pp. 9-10]. Plaintiffs are mistaken. To begin, after Detective Gray raised the defense of qualified immunity, it was Plaintiffs' burden to defeat the defense by pointing to a closely analogous case or by persuading the court that Detective Gray's conduct was so egregious and unreasonable that no reasonable officer would believe that they were acting lawfully. *Abbott*, 705 F.3d at 723-24. Plaintiffs have done neither and as such, qualified immunity applies and summary judgment should be entered in Detective Gray's favor.

Regardless of Plaintiffs' failure to meet their burden, the evidence of record establishes that probable cause existed, as discussed above. Detective Gray received information from R.M. that he was kicked out of his house and his parents were not providing money or food (save for one time) since the time that he had been kicked out. This information was confirmed by Suzanne Brewer, the mother of the house he was staying at when he was kicked out. A reasonable officer in Detective Gray's position, with said information, could have reasonably believed that probable cause existed to arrest Plaintiffs for the violation of the Indiana neglect of a dependent and non-support of a dependent statutes and Detective Gray is entitled to qualified immunity.

Assuming *arguendo* that Detective Gray received the text messages in Plaintiffs' Exhibit 5, that A.B. and John Doe did not kick R.M. out of the house, and Detective Gray still determined that probable cause existed to arrest Plaintiffs, he is still entitled to qualified immunity. As long

14

as the police officer reasonably believes, although said belief may later be determined to be mistaken, that probable cause exists to arrest an individual, the officer is entitled to qualified immunity. *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 880 (7th Cir. 2012). Here, in the event that the Court determines that a material issue of fact exists as to whether R.M. was kicked out of the house, because Detective Gray reasonably believed that probable cause existed to arrest John Doe and A.B. for neglect of and non-support of a dependent, Detective Gray is entitled to qualified immunity and summary judgment should be granted in his favor. [Gray Affidavit, ¶ 11].

Further, Detective Gray is entitled to qualified immunity for the additional reason that he relied on advice of counsel in deciding to arrest Plaintiffs. Plaintiffs again argue that qualified immunity is inappropriate because there is a question as to what Detective Gray knew and subsequently told Chief Deputy Prosecutor Mary Ryan. [DE #64, p. 10]. When determining if probable cause exists and information has been alleged to have been omitted, the omission is only material if the inclusion of the information would have defeated probable cause. *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010). Courts will ask whether a hypothetical affidavit that includes the omitted information would still establish probable cause. *Id*.

In this case, Detective Gray conveyed all of the information he learned in his investigation to that point (from R.M., Suzanne Brewer, DCS, the school, etc.) to Chief Deputy Prosecutor Mary Ryan, who advised that he had probable cause to arrest both John Doe and A.B. for neglect of a dependent and non-support of a dependent. [Gray Affidavit, ¶ 12]. Plaintiffs' contention that Chief Deputy Prosecutor Mary Ryan did not have the text messages in Plaintiffs' Exhibit 5 does not defeat qualified immunity because Chief Deputy Prosecutor Mary Ryan had all of the *material* evidence needed to make the probable cause determination. The text messages would not defeat probable cause because, as discussed above, resolving all inconsistencies in a victim's story is not

15

required to determine if probable cause exists, and therefore the text messages are not material. As such, Detective Gray is entitled to qualified immunity for the reliance on advice of counsel. *See Davis v. Zirkelbach*, 149 F.3d 614, 620 (7th Cir. 1998)

### III. JOHN DOE'S STATE LAW CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND RESPONDEAT SUPERIOR FAIL.

#### A. John Doe's Intentional Infliction of Emotional Distress Claim Fails.

##### 1. Detective Gray is Immune under Ind. Code § 34-13-3-3(8).

This court should grant summary judgment in Detective Gray and Starke County Sheriff's Department's favor because Detective Gray is entitled to law enforcement immunity and his conduct was otherwise not extreme and outrageous. John Doe brings an intentional infliction of emotional distress ("IIED") claim against Detective Gray in his individual and official capacities. In their Response, "Plaintiffs concede that Detective Gray is entitled to immunity under ITCA in his individual capacity" and as such, summary judgment should be entered in Detective Gray's favor on the IIED claim asserted against Detective Gray in his individual capacity.

Further, Detective Gray (in his official capacity) and/or the Starke County Sheriff's Department is immune under Ind. Code § 34-13-3-3(8) for John Doe's IIED claim. John Doe argues that Detective Gray is not entitled to immunity because "*while investigating claims of sexual assault*" Detective Gray, without any reason, made the disclosure that John Doe was born female and did not have a penis. [DE #64, p. 10] (emphasis added). Although John Doe claims that Detective Gray did not have a reason for the disclosure, he specifically admits that Detective Gray was "investigating claims of sexual assault" when he made the disclosure. As such, John Doe acknowledges and admits that Detective Gray was enforcing the law – interviewing an arrestee and investigating sexual assault allegations – when he made the disclosure and Detective Gray is entitled to immunity for "the enforcement of…a law." *See Reiner v. Dandurand*, 33 F.

Supp. 3d 1018, 1032 (N.D. Ind. 2014) (dismissing an IIED claim because one cannot survive simply because it is a product of improper conduct); *Chapman v. Indiana*, 2014 WL 1831161, at *4 (N.D. Ind. May 8, 2014) (noting that police officers have immunity for IIED claims arising from their actions in effecting arrests while engaged in law enforcement duties); *Ashcraft v. City of Crown Point*, 2013 WL 5934612, at *6 (N.D. Ind. Nov. 5, 2013) (finding immunity was appropriate while engaging in a traffic stop as the officer was engaged in the enforcement of the law); *Hostetler v. City of Southport*, 2018 WL 1505012, at *4 (S.D. Ind. Mar. 27, 2018) (noting that carrying out law enforcement duties include interviews and other investigative acts). Therefore, Detective Gray is entitled to immunity in his official capacity under the ITCA for the enforcement of the law and summary judgment should be entered in his favor as a matter of law.

### 2. Detective Gray's Conduct was Not Intentional, Nor Extreme and Outrageous.

In the event that the Court finds that these Defendants are not immune under the ITCA for John Doe's IIED claim, summary judgment should still be entered in these Defendants' favor because Detective Gray's conduct was not extreme and outrageous. John Doe argues that summary judgment is inappropriate because Detective Gray's conduct was intentional or reckless as he allegedly did not have a "reasonable reason" to make the disclosure and his own personal beliefs. [DE #64, p. 11]. John Doe is mistaken.

Here, Detective Gray's disclosure of John Doe's birth name, sex, and anatomy to A.B., John Doe's wife, was not done with an intent to cause emotional harm, which is the basis of the tort. *See Collins v. Purdue University*, 703 F. Supp. 2d 862, 871 (N.D. Ind. 2010). John Doe did not come forward with any evidence that Detective Gray intended to cause John Doe emotional harm when he disclosed John Doe's birth name, sex, and anatomy to John Doe's wife, A.B. Instead of addressing the lack of intent to cause John Doe emotional harm, John Doe states that

17

the disclosure was intentional or reckless and done without a "reasonable reason." Same is not enough to overcome summary judgment.

Detective Gray's intent in the disclosure was for solely for law enforcement purposes, specifically the investigation of allegations of sexual misconduct of children related to John Doe, which is not only a "reasonable reason," specifically to enforce the law, but is wholly unrelated and independent of any personal views. [Gray Affidavit, ¶ 21]. John Doe has not come forward with any evidence to the contrary.[6] Moreover, it is not extreme and outrageous as a matter of law to make true, non-defamatory statements to the public, nor to engage in lawful law enforcement activities, which is what Detective Gray did in disclosing the truth as to John Doe's birth name, sex, and anatomy. *See Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996) (holding that summary judgment was proper as a matter of law because true statements made during a press conference and the execution of valid arrest and search warrants by seven officers was not extreme and outrageous). Last, it was not extreme and outrageous for Detective Gray to disclose this information to A.B., as A.B. and John Doe were married and had been in an intimate relationship for eleven years. [A.B. Deposition, pp. 45-46]. A reasonable person would expect such a person to know that type of information of an intimate partner and cannot be said to be so outrageous in character so as to exceed all possible bounds of decency. Therefore, Detective Gray's was not extreme and outrageous as a matter of law and summary judgment is appropriate in his favor. *See Conwell*, 667 N.E.2d at 777.

---

[6] John Doe attempts to argue that the disclosure was made based on Detective Gray's personal beliefs, citing to Detective Gray's personal Facebook posts. [DE #64, p. 11; DE #64-7]. As stated above, Detective Gray's actions were solely for law enforcement purposes, in investigating child sexual abuse, and in no way connected to any personal views that he may have held. [Gray Affidavit, ¶ 21]. Further, the personal views that Detective Gray expressed on his private Facebook page were made *after* John Doe's arrest and *after* the disclosure. [DE #64-7]. John Doe has not come forward with any evidence that Detective Gray held these opinions at the time of the disclosure, nor that said views played any part in the disclosure. As such, John Doe's reference to the Facebook posts are nothing more than a red herring and is otherwise rank speculation, which is insufficient to overcome summary judgment. *McCoy*, 341 F.3d at 604.

18

### B. John Doe's *Respondeat Superior* Claim Fails.

This Court should grant summary judgment in favor of the Starke County Sheriff's Department on John Doe's *respondeat superior* claim because Detective Gray is immune and/or otherwise did not commit a tort that would subject it to liability. As discussed above, Detective Gray is entitled to immunity for John Doe's IIED claim and Detective Gray's conduct was otherwise not extreme and outrageous. John Doe has not come forward with any evidence to establish otherwise, as discussed above. Therefore, without an underlying tort, Starke County Sheriff's Department cannot be held liable under *respondeat superior* and summary judgment is appropriate in its favor. *See Zander v. Orlich*, 2017 WL 2928198, at *1 (N.D. Ind. July 10, 2017).

### CONCLUSION

WHEREFORE, Defendants, ADAM GRAY and STARKE COUNTY SHERIFF'S DEPARTMENT, respectfully request that this Court grant their Motion for Summary Judgment in its entirety and/or for any relief deemed just and proper in the premises.

Respectfully Submitted,

/s/ Katlyn M. Christman
Katlyn M. Christman (#34670-64)

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for Defendants, ADAM GRAY, and
STARKE COUNTY SHERIFF'S DEPARTMENT
233 E. 84th Drive, Suite 301
Merrillville, IN 46410
219/322-0830; FAX: 219/322-0834
EMAIL:  Kchristman@khkklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd of November, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

- **Elizabeth A. Knight** – eknight@khkklaw.com
- **Katlyn M. Christman** – kchristman@khkklaw.com
- **Russell W Brown , Jr.** – rbrown@kbmtriallawyers.com, dwilliams@kbmtriallawyers.com
- **Alexander R. Carlisle** – alexander.carlisle@atg.in.gov

**MANUAL NOTICE:**  None.

/s/ Miranda Jacobsen

21-11-23 MSJ Reply 7238