UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN DOE AND A.B.,

           Plaintiffs,

   v.                                       CAUSE NO. 3:20-CV-129 DRL

ADAM GRAY *et al.*,

           Defendants.

## OPINION AND ORDER

John Doe and A.B. were arrested for neglect of a dependent and non-support of a child. During the subsequent investigation, John Doe and A.B. say Detective Adam Gray of the Starke County Sheriff's Department unlawfully disclosed John Doe's private information to A.B., his spouse. They also claim Detective Gray shared private information with Katherine Purtee, a family case law manager at the Indiana Department of Child Services, who thereafter disclosed the information to A.B.'s children, A.B.'s sister, and the involved foster parents. They allege Detective Gray and Case Manager Purtee violated the Fourteenth Amendment (right to privacy), Fourth Amendment (unreasonable seizure), and state law (intentional infliction of emotional distress) for which the Starke County Sheriff's Department is also liable under the theory of *respondeat superior*. Today the defendants request summary judgment on all claims. Because no reasonable jury could find for John Doe and A.B., the court grants the motion.

## BACKGROUND

John Doe and A.B.'s claims arise from their February 7, 2018 arrests for neglect of a dependent and non-support of a child and the subsequent investigation. John Doe is a transgender male who was born female [ECF 64 at 1]. John Doe and A.B. are married [*id.*]. On February 1, 2018, Detective Gray

and Case Manager Purtee interviewed R.M. after notification that A.B. (his biological mother) and John Doe (his stepfather who is neither R.M.'s biological nor adoptive parent) abandoned him.

During this interview, R.M. disclosed that A.B. and John Doe kicked R.M. out of their home because R.M. knew his sister snuck out one evening [ECF 44-1 ¶ 5(c)]. John Doe told him not to come home in a phone call [*id.*] This is not the first time John Doe and A.B. kicked R.M. out of the house [*id.* ¶ 5(b)]. R.M. stayed at the home of Suzanne Brewer from January 22, 2018 until after John Doe and A.B.'s arrests on February 7, 2018.[1] [*id.* ¶¶ 5(c), 9(c); ECF 39-1 ¶ 7].

R.M. also disclosed he returned home to do chores two days after being kicked out but then returned to Ms. Brewer's house [ECF 44-1 ¶ 5(h)]. R.M. provided text messages between him and A.B. to Detective Gray [ECF 64-4 at 2]. A.B. told R.M. that whatever John Doe said goes and texted R.M. to come home and stay on the couch because he was grounded [*id.* ¶¶ 5(e), (g)]. A.B. once dropped off food for R.M. at Ms. Brewer's house and left it on the porch [*id.* ¶ 5(f)]. R.M. told Detective Gray and Case Manager Purtee that he did not get along with John Doe because he knew things about John Doe that John Doe wanted to be kept secret and R.M. believed John Doe was molesting R.M.'s sisters [*id.* ¶¶ 5(i), (j)]. Additional text messages between R.M. and A.B. illustrate R.M. told his school he was kicked out of the house and that he was "only protecting [himself] from [r]un away charges" [ECF 64-5 at 5-6]. John Doe and A.B. contend the text messages show that R.M. was not kicked out of the house [ECF 64 at 1]. Detective Gray investigated R.M.'s statements and obtained previous police reports involving John Doe and A.B. [ECF 44-1 ¶¶ 6-7].

On February 7, 2018, Detective Gray and Case Manager Purtee conducted another interview with R.M. when he corroborated his previous statements [*id.* ¶¶ 8-9]. R.M. further described a text

---

[1] In his first interview with authorities, R.M. stated he was kicked out of the house on January 22, 2018 [ECF 44-1 ¶ 5(c)]. During his second interview, he disclosed he had been staying at Ms. Brewer's house since January 16, 2018 [*id.* ¶ 9(c)]. Ms. Brewer stated that R.M. had been staying with her since January 16, 2018 [*id.* ¶ 10]. In the defendants' motions they use the January 22, 2018 date. John Doe and A.B. don't object so the court will adhere to this timeline. The exact date is not determinative on this record.

2

message from John Doe telling R.M. to stay at Ms. Brewer's house because he lied, had not changed, and was kicked out of the house [*id.* ¶ 9(a)]. R.M. disclosed that John Doe told him to retrieve his things from their household and he was not provided money or food from John Doe or A.B. while he was kicked out of the house—albeit when A.B. once left food on the porch [*id.* ¶¶ 9(b), (d)]. R.M. spoke more about his knowledge of John Doe's previous name, biological sex, and his concerns about John Doe abusing his sisters [*id.* ¶¶ 9(g)-(q)]. Ms. Brewer confirmed in writing that R.M. was staying at her house, A.B. and John Doe did not provide her with any money to care for R.M., she never spoke with A.B., and A.B. hadn't visited to check on R.M. [*id.* ¶ 10; ECF 39-1 ¶ 8; ECF 44-3].

That same day, Detective Gray contacted Chief Deputy Prosecutor Mary Ryan about his investigation into John Doe and A.B. Chief Deputy Prosecutor Ryan advised Detective Gray that he had probable cause to arrest A.B. and John Doe for neglect of a dependent and non-support of a child [ECF 44-1 ¶ 12].

Later that day, A.B. and John Doe were arrested at their home and transported to the Starke County Jail [ECF 44-1 ¶ 13]. During processing, John Doe initially refused to change into a jail uniform [*id.* ¶ 15]. Detective Gray informed John Doe that he knew John Doe did not want to change clothes because "he had female parts" [*id.* ¶ 17]. John Doe eventually complied with Detective Gray's request to change into the jail uniform [*id.*].

After John Doe and A.B.'s arrests, Case Manager Purtee took custody of the three minor children [ECF 64 at 2]. Case Manager Purtee contacted April Moore, A.B.'s sister, to inquire about custody when Case Manager Purtee allegedly stated "you know she is a girl right?"—or, at least as plaintiffs allege, she disclosed John Doe's "sexual preference" [ECF 64-1 ¶ 9].[2] Ms. Moore had no prior knowledge of John Doe's sexual preference or gender identity [*id.* ¶ 13]. Case Manager Purtee

---

[2] John Doe and A.B. use the term "sexual preference" in their complaint. As the complaint stands, John Doe and A.B. allege that Detective Gray and Case Manager Purtee disclosed his sexual preference—though recognizing the facts describe this to be that John Doe was born female and does not have male genitalia.

3

dropped off two children to Tracy Patrick, a foster parent, and disclosed John Doe's sexual preference to her [ECF 1 ¶ 20]. While visiting R.M. and J.M. (A.B.'s daughter) at Ms. Brewer's house, Case Manager Purtee also allegedly disclosed John Doe's sexual preference to J.M. and Ms. Brewer [ECF 64-2 ¶¶ 9-14].

On February 8, 2018, Detective Gray interviewed A.B. to investigate the circumstances of R.M.'s prolonged stay at Ms. Brewer's house and R.M.'s allegation of sexual assault [ECF 44-1 ¶ 20]. During Detective Gray's interview with A.B., he stated John Doe was born Barbara B., he was born female, and did not have male genitalia—or, as John Doe and A.B. allege, Detective Gray disclosed John Doe's sexual preference [*id.* ¶ 21]. A.B. told Detective Gray that she did not know John Doe did not have male genitalia but was aware of his previous name and that "medically down there like it's different" [ECF 44-5 at 16].

John Doe and A.B. sued Detective Gray, Case Manager Purtee, and the Starke County Sheriff's Department alleging violations of the Fourth Amendment, Fourteenth Amendment, and state law. The defendants separately filed summary judgment on August 27, 2021. On September 30, 2021, plaintiffs filed a motion to amend. From the outset, John Doe and A.B. alleged that John Doe's "sexual preference" was inappropriately disclosed and sought to amend their complaint to clarify that it was actually his "gender identity." They offered no explanation for their significant delay after letters and emails from opposing counsel, revealing deposition questions, and the defense's motions for summary judgment. John Doe and A.B. believed it unimportant to correct their complaint until the rubber hit the road, so their motion to amend was denied for undue delay and futility [ECF 63].

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to

4

find in her favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920. The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

### A. *Detective Gray and Case Manager Purtee are Entitled to Qualified Immunity on the Fourteenth Amendment Substantive Due Process Claim.*

John Doe alleges Detective Gray and Case Manager Purtee violated the due process clause of the Fourteenth Amendment by disclosing John Doe's sexual preference. This asserted constitutional violation is the only remaining claim against Case Manager Purtee. John Doe alleges Detective Gray disclosed his sexual preference to A.B. and alleges Case Manager Purtee disclosed this information to Ms. Moore, J.M., and the foster parents.

Due to the delayed attempt to amend his complaint and its subsequent denial, some inconsistency exists that this order now resolves. In one sentence, John Doe alleges Detective Gray and Case Manager Purtee disclosed his sexual preference; and, in another, he says they disclosed he was born female and does not have male genitalia. The court denied the motion to amend to rectify

5

these counterfactual allegations yet John Doe proceeds to respond to the summary judgment motions as though he were allowed to amend the complaint.

It is not disputed that Detective Gray disclosed information to A.B. during the investigative interview—namely, that John Doe was previously named Barbara, was born female, and did not have male genitalia [ECF 44-1 ¶ 21]. It is also not disputed that Detective Gray did not disclose John Doe's sexual preference. On the other hand, there is a dispute as to if, to whom, and what Case Manager Purtee disclosed. During John Doe's deposition, he admits that Case Manager Purtee never disclosed information about his sexual preference [ECF 39-5 at 84:8-12]. John Doe alleges in the complaint that Case Manager Purtee disclosed that he was born female [ECF 1 ¶¶ 21-22]. Case Manager Purtee denies that she disclosed this information to the involved foster parents and that the children already knew this information [ECF 39 at 12, 14]. Whether Detective Gray and Case Manager Purtee disclosed John Doe's sexual preference or gender identity, the assertions of constitutional violations are barred by the doctrine of qualified immunity.

The concept of ordered liberty protected by the Fourteenth Amendment's due process clause has been interpreted to include "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977). Courts of appeals, including this circuit, "have interpreted *Whalen* to recognize a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information—information that most people are reluctant to disclose to strangers—and have held that the right is defeasible only upon proof of a strong public interest in access to or dissemination of the information." *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010); *see, e.g., Denius v. Dunlap*, 209 F.3d 944, 955-58 (7th Cir. 2000) (right to privacy in medical information); *Anderson v. Romero*, 72 F.3d 518, 521-22 (7th Cir. 1995) (recognizing generally right to privacy in medical records and communications).

Detective Gray and Case Manager Purtee first argue that John Doe failed to demonstrate a violation of the Fourteenth Amendment. This isn't the initial inquiry for the court as Detective Gray and Case Manager Purtee also argue that they are entitled to qualified immunity. The law underpinning qualified immunity favors its treatment at the earliest opportunity, *see Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987), so the court starts there.

Detective Gray and Case Manager Purtee say they are immune whether they disclosed John Doe's sexual preference or gender identity because a Fourteenth Amendment right to keep one's sexual preference or gender identity private from disclosure to one's spouse, the spouse's children, or foster parents by state authorities was not clearly established at the time of the alleged conduct. Qualified immunity shields officials from liability unless a claimant proves two elements: first, that the official violated a constitutional right; and second, that this right was clearly established at the time of the conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The court may address either element first, *id.*, though this circuit has endorsed analyzing the second element initially to prevent unnecessary litigation, *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017).

Officials are shielded from civil liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (quotations and citation omitted). The law cautions against defining clearly established rights at a high level of generality. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Clearly established law must be "particularized" to the facts of the case, *Creighton*, 483 U.S. at 640, such that "existing precedent . . . place[s] the statutory or constitutional question beyond debate," *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 741).

7

The court's conclusion has not changed since the denial of John Doe and A.B.'s motion to amend. Once more, John Doe cannot simply say Detective Gray and Case Manager Purtee violated his Fourteenth Amendment right to privacy in generic terms and thereby overcome qualified immunity. He must particularize the law to the facts and circumstances of his case. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018). He may point to "closely analogous cases" establishing the conduct as unlawful or may "demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." *Morrell v. Mock*, 270 F.3d 1090, 1100 (7th Cir. 2001). The plaintiffs have the burden of defeating the qualified immunity defense. *Chasenky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014).

John Doe does not cite to any closely analogous cases to show that a Fourteenth Amendment right to keep his sexual preference or gender identity private from disclosure to his spouse, his spouse's children, or foster parents by state authorities was clearly established. He again cites to *Wolfe*, 619 F.3d at 785-86 (no right to privacy in information that a candidate for office was under investigation), and *Denius*, 209 F.3d at 955-58 (recognized clearly established right to privacy in medical information); but the court has already explained why neither case supports his position [ECF 63], and John Doe offers no cogent reason today why that view of the law is misplaced.

General assertions are insufficient to overcome qualified immunity. *City of Escondido*, 139 S. Ct. at 503. John Doe must show that the specific conduct—disclosing an individual's sexual preference or gender identity to one's spouse, children, or foster parents during an investigation—was clearly established as unconstitutional under the circumstances. *See Romero*, 72 F.3d at 522-23. Knowledge that the disclosure of medical information in some circumstances might be unconstitutional is simply not enough to show that Detective Gray and Case Manager Purtee would know, or should have known, that what they disclosed to these individuals under these circumstances was unconstitutional.

*See id.*; *see also Wyatt v. Fletcher*, 718 F.3d 496, 508-10 (5th Cir. 2013) (granting qualified immunity on claim alleging informational privacy right to student's sexual orientation in meetings with parents).

John Doe and A.B. also claim that there is a "clear trend in the caselaw that [the court] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Jacobs v. City of Chi.*, 215 F.3d 758, 767 (7th Cir. 2000) (quoting *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir. 1989)). They state case law trends toward providing more constitutional protections for the LGBTQ community, including *Lawrence v. Texas*, 539 U.S. 588 (2003) (criminalization of same sex sexual conduct is unconstitutional), *United States v. Windsor*, 570 U.S. 744 (2013) (defining marriage to be only between a man and woman is unconstitutional), and *Obergefell v. Hodges*, 576 U.S. 644 (2015) (depriving same-sex couples of the right to marry is unconstitutional). Though a case directly on point is not required for a right to be clearly established, *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012), this generalized trend toward recognizing rights for same-sex relationships is not tailored to the disclosure of private information and does not demonstrate that a sufficient consensus had been reached on the right to keep one's sexual preference or gender identity private from disclosure to family or foster parents by state authorities during an investigation. *See Cleveland-Perdue*, 881 F.2d at 431. The court is confined today to this precise issue.

John Doe and A.B. have not met their burden to prove that existing precedent placed the constitutional question beyond debate. *See Chasenky*, 740 F.3d at 1095-96. Detective Gray and Case Manager Purtee are accordingly entitled to qualified immunity.

  B. *Detective Gray is Immune from Suit for John Doe and A.B.'s Fourth Amendment Claim for Unlawful Arrests.*

Detective Gray also asserts a defense of qualified immunity as to John Doe and A.B.'s Fourth Amendment claim for their alleged unlawful arrests. Argument on probable cause collapses into the second step of the qualified immunity analysis. The right to be free from warrantless arrests without probable cause has long been clearly established. *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015).

The next step in the inquiry is whether Detective Gray violated a constitutional right. *See Ashcroft*, 563 U.S. at 735.

John Doe and A.B. were arrested for neglect of a dependent and non-support of a child. An individual commits neglect of a dependent if said "person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, [] knowingly or intentionally [] deprives the dependent of necessary support." Ind. Code § 35-46-1-4(a)(3). An individual commits non-support of a child if they "knowingly or intentionally fail[] to provide support to the person's dependent child…." Ind. Code § 35-46-1-5(a).

The government argues there was probable cause to arrest John Doe and A.B. for these offenses. In response, John Doe and A.B. argue Detective Gray did not have probable cause because text messages between R.M. and A.B. show inconsistencies in R.M.'s story. They further argue that a genuine issue of material fact exists as to what text messages Detective Gray reviewed and had knowledge of before conducting the arrests.

The law does not merely presume a legal arrest when officers act without a warrant. *United States v. Longmire,* 761 F.2d 411, 417 (7th Cir. 1985). Instead, under the Fourth Amendment, a warrantless arrest is reasonable where there is probable cause to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford,* 543 U.S. 146, 152 (7th Cir. 2004). Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "does not require an actual showing of criminal activity, or even that the existence of criminal activity is more likely true than not." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (quotations omitted). By definition, probable cause looks to probabilities—"examining the totality of the circumstances in a common sense manner," *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003), and the "'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act,'" *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (quoting *Brinegar v. United States,* 338 U.S. 160, 174-75 (1949)).

Law enforcement cannot rely on information gathered after an arrest and back-build a case for probable cause. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause is determined by reasonable conclusions drawn from the facts known to the arresting officer at the time of the arrest. *Maryland* v. *Pringle*, 540 U.S. 366, 371 (2003). "Whether [an] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck,* 379 U.S. at 91 (citing *Brinegar*, 338 U.S. at 175-176).

John Doe and A.B. submit text messages between R.M. and A.B. that they contend show a triable issue about what Defendant Gray knew at the time of John Doe's and A.B.'s arrests. These text messages discuss, for instance: chores that R.M. did not do, R.M. getting kicked out of the house and needing to pick up his stuff, A.B. telling R.M. he is grounded and should stay on the couch, R.M. telling the school he got kicked out and trying to protect himself from getting charged with running away, A.B. contending she did not kick him out and wanting to sign over custody to R.M.'s father, and A.B. bringing food over to R.M. [ECF 64-5]. Detective Gray contends he only had knowledge of text messages from A.B. telling R.M. to deal with being kicked out on his own and telling R.M. to come home and get on the couch because he was grounded [ECF 65 at 11]. Detective Gray does not claim he knew of text messages when: R.M. claimed to tell his school he was kicked out of the house, stated he was "only protecting [himself] from [r]un away charges," and A.B. said she did not kick R.M. out of the house.

Detective Gray argues these text messages would not be admissible at trial because they are hearsay. Affidavits and exhibits submitted to support or oppose a summary judgment motion must be based on personal knowledge and set forth facts that would be admissible in evidence. Fed. R. Civ. P. 56(e); *see, e.g.*, *Drake v. Minn. Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998). Hearsay (an out-

11

of-court statement offered to prove the truth of the matter asserted) is as inadmissible on summary judgment as it would be at trial, *see, e.g., Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 856-57 (7th Cir. 1999), unless the party offering such evidence demonstrates that it falls under an exception, *Boyce v. Moore*, 314 F.3d 884, 889-90 (7th Cir. 2002). Out-of-court statements presented for other purposes aren't hearsay. Statements intended to show, for example, the speaker's state of mind or notices and knowledge of a party aren't inadmissible hearsay. *EEOC v. Univ. of Chi. Hosp.*, 276 F.3d 326, 333 (7th Cir. 2002) (speaker's state of mind); *Cook v. Navistar Int'l Transp. Corp.*, 940 F.2d 207, 213 (7th Cir. 1991) (notice and knowledge of party). In short, the text messages aren't inadmissible hearsay for purposes of showing Detective Gray's knowledge of the circumstances and information that formed his probable cause determination.

Though an issue of fact may exist as to what exact text messages Detective Gray knew of, it is not a dispute of material fact. A material fact exists when there is a factual dispute that is outcome determinative under governing law. *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). The additional text messages presented by John Doe and A.B. do not change the outcome of the probable cause determination.

Detective Gray says he only had knowledge of certain text messages; John Doe and A.B. contend he knew about them all. Either way, most of the information revealed in these text messages was known to Detective Gray from other sources: the two interviews with R.M and the letter from Ms. Brewer. Probable cause depends on the "totality of the circumstances—the whole picture—not each fact in isolation," *United States v. Rees*, 957 F.3d 761, 766 (7th Cir. 2020) (quotations and citation omitted), and whether Detective Gray knew about the remaining messages is not outcome determinative in light of the factual circumstances in totality.

Based on this record, Detective Gray knew (1) R.M. had previously been kicked out of the house by his parents; (2) R.M. got in trouble and was told on the phone by John Doe to not come

home; (3) John Doe told R.M. that he had not changed and should continue staying at Ms. Brewer's house; (4) John Doe told R.M. to retrieve his stuff from their home; (5) A.B. said whatever John Doe said goes; (5) John Doe and A.B. never provided financial support to R.M. or Ms. Brewer, and dropped food off once; (6) A.B. told R.M. to come home and get on the couch because he was grounded; (6) R.M. was living at Ms. Brewer's house from January 22, 2018 to February 7, 2018; and (7) Ms. Brewer confirmed a majority of the facts R.M. disclosed [ECF 44-1].

The totality of the circumstances—not viewing the text messages in insolation—proves sufficient to warrant a prudent officer in believing that John Doe and A.B. had committed or were committing neglect of a dependent and non-support of a child. *See Beck,* 379 U.S. at 91. Probable cause to arrest A.B. and John Doe on this record was sufficient, so there was no constitutional violation. The court need not address whether the advice from Chief Deputy Prosecutor Ryan entitles Detective Gray to qualified immunity as his conduct was constitutional and otherwise entitled him to qualified immunity. The court must grant summary judgment accordingly.

    C.    *John Doe's Emotional Distress Claim is Barred by the ITCA.*

In count three, John Doe advances an emotional distress claim based on state law against Detective Gray for disclosing personal information—his sexual preference or his gender identity. Detective Gray is immune personally and in his official capacity from such claim under the Indiana Tort Claims Act (ITCA), and so is the Starke County Sheriff's Department.

Generally, when "all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). There are three acknowledged exceptions to this rule: when (1) "the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court;" (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort;" or (3) "when it is

13

absolutely clear how the pendent claims can be decided." *Id.* (quotations and citations omitted). On this record, and given the case's age, substantial judicial resources have been committed to this case. Additionally, the proper resolution of this state law claim is absolutely clear.

"A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). A plaintiff cannot sue a government employee "personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of employment." *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003). "Under the [ITCA], there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) (citing Ind. Code § 34-13-3-5-(b) and *Julian v. Hanna*, 732 F.3d 842, 848-49 (7th Cir. 2013)). John Doe explicitly alleges "Defendant Gray was acting within the scope of his employment as an officer with the Starke County Sheriff Department" [ECF 1 ¶ 45], and John Doe concedes that Detective Gray's conduct is immune from suit in his individual capacity [ECF 64 at 10 n.3].

Detective Gray would also be immune in his official capacity. "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce [] a law (including rules and regulations)." Ind. Code § 34-13-3-3(8). This provision explicitly provides immunity for governmental employees carrying out law enforcement duties, unless the act of enforcement constitutes false arrest or imprisonment. *Johnson ex rel. Indiana Dep't of Child Servs. v. Marion Cty. Coroner's Office*, 971 N.E.2d 151, 156 (Ind. Ct. App. 2012). The Indiana Supreme Court "has clarified that 'in Indiana, an employee's tortious act may fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business.'" *City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. Ct. App. 1999) (quoting *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993)).

John Doe argues that Detective Gray was not adopting or enforcing the law when he disclosed John Doe's sexual preference or gender identity to A.B, so was acting outside his scope of employment. He claims there was no reason to disclose that John Doe was female and did not have male genitalia while investigating claims of sexual assault.

Though not everything a law enforcement officer does in the scope of his duties is enforcing a law, *see, e.g., Patrick v. Miresso*, 848 N.E.2d 1083, 1086-87 (Ind. 2006), Detective Gray was enforcing the law by conducting an investigatory interview of two arrestees, *see Reiner v. Dandurand*, 33 F. Supp.3d 1018, 1031-33 (N.D. Ind. 2014) (dismissing emotional distress claim when officers filed a police report); *see also Chapman v. Indiana*, 2014 U.S. Dist. LEXIS 63593, 10-12 (N.D. Ind. May 8, 2014) (dismissing emotional distress claim against officers for immunity); *Ashcraft v. City of Crown Point*, 2013 U.S. Dist. LEXIS 158003, 17-19 (N.D. Ind. Nov. 5, 2013) (dismissing emotional distress claim when officers were conducting a traffic stop). John Doe even admits as much by asserting that Detective Gray's conduct occurred "while investigating claims of sexual assault" [ECF 64 at 10]. Detective Gray's conduct was furthering the business of the Starke County Sheriff's Department and occurred during an investigative interview to enforce the law. *See Hostetler v. City of Southport*, 2018 U.S. Dist. LEXIS 49935, 13-15 (S.D. Ind. Mar. 27, 2018). Thus, John Doe's emotional distress claim for disclosure of his sexual preference or gender identity against Detective Gray is barred.

"Governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the [ITCA] applies." *Minks v. Pina*, 709 N.E.2d 379, 382 (Ind. Ct. App. 1999). The Starke County Sheriff's Department is immune under the same theory as Detective Gray. John Doe and A.B. make no argument otherwise as to the Starke County Sheriff's Department's immunity. The court must grant summary judgment accordingly.

CONCLUSION

Construing all facts and reasonable inferences in favor of John Doe and A.B., the court GRANTS the defendants' motions for summary judgment on all claims [ECF 39, 43] and their motions to seal [ECF 42, 46], thereby terminating this case. The court DIRECTS the entry of judgment for Detective Gray, the Starke County Sheriff's Department, and Case Manager Purtee.

SO ORDERED.

March 1, 2022                                                *s/ Damon R. Leichty*
                                                            Judge, United States District Court